**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 2005-11348 and**
**NO. 2005-11603 (Consolidated)**

**JOSEPH SCHMITT,**
         **Plaintiff,**

**v.**

**ROBERT MURPHY, ET AL.,**
         **Defendants.**

---

**MOTION TO DISMISS, OR, IN THE ALTERNATIVE,**
**MOTION AND MEMORANDUM FOR SUMMARY JUDGMENT**

---

**INTRODUCTION**

The Plaintiff, *pro se* inmate Joseph Schmitt is an inmate lawfully committed to the

Massachusetts Department of Correction ("DOC") at the Massachusetts Treatment Center

("MTC").[1] The Plaintiff filed this action against DOC employees Robert D. Clauss, David

Leonard, Mark Dare, Steven Fairly, Robert Murphy, Robert J. Waitkevich, Kathleen M.

Dennehy, and Timothy Hall (collectively, the "Defendants"). In his Complaint, the Plaintiff

alleges that the Defendants improperly confiscated certain personal items. The defendants

hereby move to dismiss the complaint or, in the alternative, for summary judgment in their favor.

**FACTS[2]**

On or about April 1, 2005, the MTC received a letter addressed to the Plaintiff. *Exhibit A*,

Memo of Invesigation, dated April 4, 2005. The letter came from Lillian Bates, and contained a

---

[1] The Plaintiff, a Sexually Dangerous Person committed to the MTC under G.L. c. 123A, is an "inmate" as the term is defined by G.L. c. 124, § 1 (i).

[2] Defendant stipulates to these facts for purposes of this motion only.

money order in the amount of $800.00. *Exhibit A*. On April 7, 2005, Duane MacEachern, then

the Deputy Superintendent of Operations for the MTC, sent a letter to Ms. Bates, informing her

that the letter and money order were being held as evidence in a pending investigation. *Exhibit B*,

Letter to Bates, dated April 7, 2005. On June 3, 2005, the Plaintiff wrote to MTC Superintendent

Robert Murphy, asking about the status of the money order. *Exhibit C*, Letter from Schmitt,

dated June 3, 2005. Superintendent Murphy responded on June 13, 2005, explaining that the

money order was returned to Ms. Bates. *Exhibit D*, Letter from Murphy, dated June 13, 2005.

On May 17, 2005, the Plaintiff was transferred from his cell in the MTC to the Minimum

Privilege Unit ("MPU") pending an investigation into the filing of fraudulent tax returns. *Exhibit

E*, Memo of Investigation, dated May 27, 2005. While the Plaintiff was in MPU, his property

was searched, and several items were confiscated by Inner Perimeter Security ("IPS").[3] Upon

his return to his cell, the Plaintiff noted that these items, identified by the Plaintiff as a personal

address book, a family photo, and two tax forms, had been confiscated. *See* Complaint 05-11603.

The Plaintiff wrote several letters regarding these items, and various DOC officials responded to

---

[3] The confiscated items were itemized in a letter from Inner Perimeter Security Officer Robert Clauss dated May 23, 2005. *Exhibit F*, Memo to Schmitt, dated May 23, 2005. The confiscated items included:

1 address book containing names, suspected addresses of relatives/acquaintances of residents and social security numbers of residents of the MTC;
1 white envelope with 2004 1040 tax form filled out in the Plaintff's name listing a return address in Cambridge, and a 1099 form filled out in the Plaintiff's name listing a return address in Medford;
1 2004 1040A tax book;
1 2004 1040EZ tax book;
1 2003 1040EZ tax form;
1 2003 1099 Copy B form;
3 pages torn out of a tax form book;
1 manila envelope with a 2004 1099 tax form enclosed;
1 magazine photo of a young boy taped to a piece of cardboard;
1 National Geographic magazine cover enclosed with numerous magazine cut-outs of pre-adolescent children;
1 magazine picture of a young boy fishing with others (found inside envelope labeled family photos);
1 magazine picture with nude photos of adult women;
1 sheet of white, lined paper hand-written names and social security numbers of four MTC residents;
2 2004 1040EZ forms;
1 2004 1099 tax form;
1 manila envelope that was originally sent to an attorney, but was returned due to an insufficient address, containing an issue of TIME magazine containing a photo of a nude child.

his requests. *See* Complaint 05-11603. The Plaintiff was informed that the investigation was ongoing, and that at the completion of the investigation, the status of the items would be addressed. *See* Complaint 05-11603. On July 25, 2005, the Plaintiff filed the instant case, seeking the return of his items and other remedies. *See* Complaint 05-11603.

## ARGUMENT

A motion to dismiss for failure to state a claim under Fed R. Civ. P. 12(b)(6) will be granted if it appears to a certainty that the plaintiff would be unable to recover under any set of facts. *Gonzalez-Bernal v. United States*, 907 F.2d 246, 258 (1st Cir. 1990). A court ruling on a motion to dismiss must accept the factual allegations of the Complaint as true and draw all reasonable inferences in the non-moving party's favor. *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 37 (1st Cir. 1991).

## I. ALL OF PLAINTIFF'S CLAIMS ARE SUBJECT EITHER TO DISMISSAL OR SUMMARY JUDGMENT IN DEFENDANTS' FAVOR.

Mass. R. Civ. P. 12(b)(6) requires the dismissal of a complaint when it, "fails to state a claim upon which relief can be granted." Similarly, Rule 56(b) and (c) entitle a defendant to summary judgment when, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."

A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent's case, "by demonstrating that proof of that element is unlikely to be forthcoming at trial." *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 809 (1991*); see Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 716 (1991). ". . .[I]f the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of

material fact in order to defeat [the] motion." *Pederson v. Time, Inc.*, 404 Mass. 14, 17 (1989).

"[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to

defeat the motion for summary judgment." *LaLonde v. Eissner*, 405 Mass. 207, 209 (1989).

For the reasons that follow, all of plaintiff's claims are subject either to dismissal under

Rule 12(b)(6) or summary judgment for defendants under Rule 56(b).  The Court should

accordingly enter judgment for defendants, dismissing all of plaintiff's claims.

## II.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST ANY DOC EMPLOYEE UNDER 42 U.S.C. § 1983.

To establish liability under 42 U.S.C. § 1983, a party must prove that the challenged

conduct is "attributable to a person acting under color of state law" and that the conduct "worked

a denial of rights secured by the Constitution or federal law." *Soto v. Flores*, 103 F.3d 1056,

1061 (1st Cir.), *cert. denied*, 522 U.S. 819 (1997).  Although the Plaintiff has named many DOC

employees and supervisors in his Complaint, he has not alleged or shown any denial of federal

law or constitutional rights.

The Plaintiff does not allege that the Defendants directly deprived him of a constitutional

right.  In fact, he does not even specify what acts or omissions he alleges constituted wrongful

behavior on the part of the Defendants.

Supervisory liability under § 1983 cannot be predicated only on a theory of respondeat

superior.  *See Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994);

*Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989).  Rather, a supervisor may

be deemed liable "only on the basis of his own acts or omissions." *Febus-Rodriguez v.

Betancourt-Lebron*, 14 F.3d 87, 91-92 (1st Cir. 1994); *see Bowen v. City of Manchester*, 966 F.2d

13, 20 (1st Cir. 1992).  Mere negligence by the supervisor is not enough to create liability.  *See

Maldonado-Denis*, 23 F.3d at 582; *Febus-Rodriguez*, 14 F.3d at 92; *Manarite v. City of*

*Springfield*, 957 F.2d 953, 956 (1st Cir.), *cert. denied*, 506 U.S. 837 (1992); *see also Monell v. Department of Social Servs.*, 436 U.S. 658, 692-94 & n. 58 (1978).  Nor can liability be imposed for simple failure to exercise proper supervisory control.  *Stoute v. Berman*, 555 F.Supp. 507, 511 (D.Mass. 1976).  In a case such as this, a supervisor may be held liable only when his or her "acts or omissions . . . amount to a reckless or callous indifference to the constitutional rights of others," often referred to as "deliberate indifference."  *Febus-Rodriguez*, 14 F.3d at 92; *see Maldonado-Denis*, 23 F.3d at 582 ("A supervisor may be held liable for what he does (or fails to do) if his behavior demonstrates deliberate indifference to conduct that is itself violative of a plaintiff's constitutional rights.")  To prevail, a plaintiff must demonstrate both deliberate indifference and "must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission."  *Maldonado-Denis*, 23 F.3d at 582.

    To demonstrate deliberate indifference, a plaintiff must show "(1) an unusually serious risk of harm. . . , (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk.  The risk, the knowledge [or willful blindness], and the failure to do the obvious, taken together, must show that the defendant is deliberately indifferent to the harm that follows." *Manarite*, 957 F.2d at 956 (internal quotations omitted).

    Here, under the first part of the test, the Plaintiff has not demonstrated that there was an unusually serious risk of harm.  In fact, he has not demonstrated that he has actually suffered any actual harm.  The only facts that the Plaintiff has alleged are 1) that a money order in the amount of $800.00 was not processed; and 2) that certain items were removed from his property as a part of an investigation and were allegedly not returned. Complaint 05-11603, ¶¶ 10-20; Complaint 05-11348, ¶¶ 13-20.  The Plaintiff has not alleged that anyone acted out of any malice or

improper motivation.  The Plaintiff has not, therefore, satisfied the first part of the deliberate indifference inquiry.

In evaluating the second part of the test, a court must consider the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825 (1994).  In *Farmer*, the Court held that, for an official's actions to amount to deliberate indifference, the official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.  There must be *both* an objective basis from which the official could conclude there is an excessive risk to an inmate *and* a subjective belief that the risk in fact exists.  It is not enough to say that a reasonable person "should have known" of the risk.  *Id*. at 843, n. 8.  The standard for deliberate indifference is equivalent to criminal recklessness, not negligence.  *Id*. at 839-40; *see also Manarite*, 957 F.2d at 956.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.  A Plaintiff must prove that the supervisor himself subjectively drew the inference that there was an excessive risk of harm and then did nothing to prevent or forestall it from occurring.

The Plaintiff has made no allegation which connects any acts or omissions by any DOC employee acting in a supervisory or hiring capacity to a deprivation of his constitutional rights.  Specifically, the Plaintiff has made no assertion that, prior to the investigation, that any DOC supervisor or employee had actual knowledge that conducting such an investigation would somehow violate his constitutional rights or otherwise violate federal or state law.  Even in a more serious context, where a hypothetical plaintiff was attacked by a correction officer, DOC supervisors not involved in such a hypothetical attack cannot be charged with failing to prevent the attack if none of its supervisory employees had knowledge of a possible constitutional

infringement.  *See Febus-Rodriguez*, 14 F.3d at 93 (detailing the importance of notice in determining supervisory liability); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 902-903 (1st Cir. 1988) (same).  Here, where there is no actual harm alleged and no constitutional right violated, the Plaintiff's claims are even more tenuous.

Finally, the Plaintiff has not alleged that the Defendants failed to take obvious steps to prevent the violation of constitutional rights.  Indeed, even taking the Plaintiff's claims as true, there was no violation of any federal, state, or constitutional right.  The Plaintiff simply alleges that he is entitled to have the items in question returned to him, and the Defendants reasonably disagree.

### III.    THE DOC DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR THE PERFORMANCE OF THE DISCRETIONARY FUNCTIONS OF THEIR POSITIONS.

To the extent that the Plaintiff seeks damages under a theory of negligence for the discretionary actions of the Defendants in returning the money order and confiscating contraband, the Court must consider the doctrine of common law immunity.  In *Gildea v. Ellershaw*, 363 Mass. 800, 820 (1973), the Supreme Judicial Court described the doctrine of common law good faith immunity:

> Upon full consideration of all the judicial precedents cited above, and of others too numerous to cite, we hold that the law of the Commonwealth should be, and therefore is, that if a public officer, other than a judicial officer, is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority and jurisdiction, he is not liable for negligence or other error in the making of that decision at the suit of a private individual claiming to have been damaged thereby. This rule is presently limited to public officers acting in good faith, without malice and without corruption.

*Gildea* was decided prior to the enactment of the MTCA, which now provides an exclusive remedy

in cases of negligence by public employees.  However, the *Gildea* rule is fully applicable to state

law claims where neither official immunity under the civil rights laws nor tort claims immunity

under G.L. c. 258, § 2 would not apply.  In *Duarte v. Healy*, 405 Mass. 43, 50 (1989), the Supreme

Judicial Court applied *Gildea* immunity to dismiss a claim that a fire chief and his subordinates

violated the Massachusetts privacy act (G.L. c. 214, § 1B).  *Gildea* immunity pertains to

**discretionary** functions:

> [T]he "discretionary function or duty" ... includes more than the
> initiation of programs and activities. It also includes determinations
> made by executives or administrators in establishing plans,
> specification or schedules of operations. Where there is room for
> policy judgment and decision there is discretion. **It necessarily
> follows that acts of subordinates in carrying out the operations of
> government in accordance with official directions cannot be
> actionable** (citations omitted) (emphasis added).

*Duarte*, citing *Patrazza v. Commonwealth*, 398 Mass. 464, 468-469 (1986).  In 1994, the Federal

District Court applied common law immunity to shield a correction officer from a prisoner's

common law battery claim, where the officer was authorized by DOC regulations to utilize

reasonable force, and where the officer did not utilize force for an impermissible purpose, but acted

within the scope of his authority. *Foster v. McGrail*, 844 F.Supp. 16, 27-28 (D.Mass. 1994).

        There are three requirements, then, for common law immunity to apply.  First, the defendant

must have been authorized, in the exercise of discretion, "to make a decision and to perform acts in

the making of that decision." *Foster v. McGrail*, 844 F.Supp. at 28, quoting *Gildea*, 363 Mass. at

820.  Second, the defendant's decision and act must have been "within the scope of his duty,

authority and jurisdiction." *Id*.  Third, the defendant must not have committed more than

"negligence or other error" in making his decision and in acting. *Id*.

Under this framework, it is clear that the Defendants are shielded from personal liability by the doctrine of common law immunity. First, with regard to the money order, the Defendants simply followed the applicable regulations and policies with regard to the appropriate monitoring of the Plaintiff's mail. With regard to the contraband items, there is no allegation or indication that any of the Defendants did anything but perform a standard property inventory, and follow the applicable policies and regulations with regard to the storage of evidence. At no point in either Complaint does the Plaintiff allege any negligence or malfeasance on the part of the Defendants. Second, with regard to MTC Superintendent Robert Murphy, there is no allegation that Superintendent Murphy's role in either incident was anything but an exercise of Superintendent Murphy's discretion. There is no other allegation that Superintendent Murphy acted in any other way to violate the Plaintiff's rights or otherwise cause him harm. The Defendants clearly took the appropriate steps when faced with the Plaintiff's own actions, and they are entitled to qualified immunity.

## IV.    THE DEFENDANTS PROPERLY FOLLOWED ALL APPLICABLE REGULATIONS AND POLICIES.

As noted above, the Plaintiff makes two factual allegations: 1) that a money order in the amount of $800.00 was not processed; and 2) that certain items were removed from his property as a part of an investigation and were allegedly not returned. Complaint 05-11603, ¶¶ 10-20; Complaint 05-11348, ¶¶ 13-20. Taking these allegations as true for the purpose of this motion, there is no allegation that the Defendants did anything wrong. In reviewing DOC's interpretation and implementation of its own regulations and policies, it is widely accepted that the task of prison administration is best left to those professionals who are trained and most knowledgeable about the proper operation of such facilities. *See, e.g., Turner v. Safley*, 482 U.S. 78 (1987) (recognizing that the problems of prison administration are complex and not susceptible to resolution through judicial decree). Prison officials "should be accorded wide-

ranging deference in the adoption and execution of policies and practices that in their judgment

are needed to preserve internal order and discipline and to maintain institutional security." *Bell*

*v. Wolfish*, 441 U.S. 520, 547 (1979).

### A. The $800.00 Money Order – Complaint 05-11603.

The letter in question arrived at the MTC on April 1, 2005, along with two other letters

containing money orders addressed to two other MTC residents, R.M. and R.D.[4]  These letters all

appeared to come from the same source.[5]  A review of the telephone records indicated that

Lillian Bates was listed in R.D.'s list of phone numbers, where she was identified as his sister.

Further, IPS performed an internet search, which indicated that Lillian Bates' phone number was

---

[4]  At the time the letters were delivered, the Plaintiff and R.M. were on approved mail monitors pursuant to 103 CMR 481.15 – Inmate Mail, which reads, in relevant part:

> (2)  The superintendent may authorize the reading, censoring or disapproval of incoming non-privileged correspondence only to prevent interference with institutional goals of security, order, discipline, or if it might facilitate, encourage or instruct in criminal activity; disapproval shall not be based upon an employee's personal views of the merit of such correspondence.  The deputy superintendent or his designee may disapprove receipt by an inmate of non-privileged correspondence, the contents of which fall as a whole or in significant part into any one of the following categories:
>> (a)  Depicts or describes procedures for the construction or use of weapons, ammunition, bombs or incendiary devices;
>> (b)  Depicts, describes, or encourages methods of escape from correctional facilities, or contains blueprints, drawings or similar descriptions of any correctional institution within the Commonwealth;
>> (c)  Depicts or describes procedures for the brewing of alcoholic beverages, or the manufacture of drugs;
>> (d)  Is written in code;
>> (e)  Depicts, describes or encourages activities that may lead to the use of physical violence or group disruption;
>> (f)  Encourages or instructs in the commission of criminal activity;
>> (g)  Sexually explicit material or material which features nudity which by its nature or content poses a threat to the security, good order, or discipline of the institution.

[5]  The letter to the Plaintiff had a return address of "Lillian Bates, 20 East. St., Attleboro, MA, 02703," and contained a money order for $800.00.  The letter to R.M. had a return address of "L. Bates, 20 East. St., Attleboro, MA 02703," and contained a money order in the amount of $200.00.  The letter to R.D. had a return address of "Mrs. Evelyn D., 31 School St., Taunton, MA 02780," and contained two money orders, one for $1,000.00 and one for $400.00.  All of the letters were written on the same type of stationary, and with the same handwriting.  All four of the money orders were purchased at the same post office (no. 027800) on the same day (March 31, 2005). *Exhibit A.*

508-455-2135.  That phone number was mentioned in the letter to R.D., and was also listed on the telephone list of another resident, K.B.[6]

Prior to the receipt of these letters, the Plaintiff had been the subject of a long-standing investigation regarding the fraudulent filing of tax returns. *Exhibit E*.  Based upon knowledge gained in that, and other, investigations, and due to the suspicious nature of the Lillian Bates money orders, they were returned to Bates.  The Plaintiff was informed of the decision to return the money order in writing on June 13, 2005. *Exhibit D*.

Based upon the above, it is clear that the Defendants followed all applicable regulations. The Plaintiff was the subject of a valid mail monitor, pursuant to 103 CMR 481.15 (2) – Inmate Mail.  The mail and money order in question were a part of a criminal enterprise that was under investigation.  The Plaintiff and the sender were notified in writing of the decision to return the mail and money order as required by 103 CMR 481.16 – Inmate Mail.[7]  Each of the Defendants, to the extent that they had anything at all to do with this particular incident, properly acted pursuant to their regulatory authority.  The Plaintiff has utterly failed to show or even allege that any of the Defendants violated any protected Constitutional right by returning the suspicious money order to its source.

---

[6]  Inmate/resident phone numbers are registered with the DOC through the telephone system as set forth in 103 CMR 482 – Telephone Access and Use.

[7]  The relevant portion of 103 CMR 481.16 (1) reads as follows:
>   (1) Correspondence.  When any correspondence, or portion thereof, addressed to an inmate is received at the institution but is not delivered to the inmate for any reason set forth in 103 CMR 481.15, the inmate, and the sender when identifiable, shall be promptly notified, in writing, of the following:
>>   (a)  the reason(s) for refusing to deliver the correspondence or a portion thereof to an inmate;
>>   (b)  the fact that a written appeal may be submitted by the inmate or sender to the superintendent.

### B. The Confiscated Items – Complaint 05-11348.

The Plaintiff has been, and continues to be, the subject of a long-standing investigation regarding the filing of fraudulent tax returns. *Exhibit E*. On May 17, 2007, IPS Lieutenant Michael Kradolfer and Officer Robert D. Clauss interviewed the Plaintiff in MPU in regard to a fraudulent check that was thought to be a part of the tax scheme. *Exhibit E*. During the interview, the Plaintiff indicated that he was being "extorted" by another resident. *Exhibit E*.

While the Plaintiff was in MPU, his cell was searched and inventoried, pursuant to 103 CMR 506.01 – Search Policy.[8] The items that were taken were properly inventoried and stored pursuant to 103 CMR 506.08 – Seizure of Contraband/Evidence and 103 CMR 506.09 – Storage of Cotnraband/Evidence. The Plaintiff was notified, in writing, of exactly what was taken. *Exhibit F*. The Plaintiff was notified, on February 17, 2006, that the items would be kept for three years, pending the outcome of the investigations, pursuant to 103 DOC 506.10 – Search Policy.[9] *Exhibit G*, Letter to Schmitt, dated February 17, 2006. In sum, the Defendants have acted justifiably and in complete accordance with all relevant regulations and policies.

---

[8] The relevant portion of 103 CMR 506.01 reads as follows:

> The superintendent or his/her designee may order the search of any person entering or confined in an institution, in or on state property, including parking areas, in order to ensure the security and safety of that institution, its inmates, employees, and visitors.

[9] The relevant portion of 103 DOC 506.10 reads as follows:

> Final disposition of all evidence shall be approved in writing by the director of security. Final disposition of evidence relating solely to a disciplinary or civil matter and not involving any possible criminal prosecution shall be approved in writing by the department's general counsel. All evidence related to a disciplinary matter shall be held for three years from the initial sanction date to ensure that no civil action has been brought against the department. Thus, evidence relating to a disciplinary matter that is less than three years from the initial disciplinary sanction date, shall not be submitted to the department's general counsel for approval. After the three year period has lapsed, then approval to destroy evidence through the general counsel shall be obtained. Final disposition of evidence relating to a criminal matter must be approved in writing by the district attorneys office. Once the DA's approval is obtained, the evidence shall be reviewed and approved by the general counsel to ensure no civil or potential civil litigation can be brought against the department.

## CONCLUSION

The Defendants are entitled to summary judgment on all claims because the Plaintiff has

failed to state a claim upon which relief may be granted.  The Plaintiff failed to claim that the

Defendants specifically denied him any protected constitutional right.  The Defendants acted in

all matters in strict accordance with the applicable policies and regulations.


                                    Respectfully Submitted

                                    by Defendants Murray, Brady and Henry,

                                    NANCY ANKERS WHITE
                                    Special Assistant Attorney General


                         by:      s/  BRENDAN J. FRIGAULT_____
                                    Brendan J. Frigault, Counsel
                                    BBO No. 647669
                                    Department of Correction
                                    Massachusetts Treatment Center
                                    30 Administration Road
                                    Bridgewater, Massachusetts 02324
                                    (508) 279-8185
Dated:  April 22, 2008             FAX: (508) 279-8181


## CERTIFICATE OF SERVICE

       I hereby certify that I caused a true copy of the attached document to be served upon the
Petitioner through intra-facility mail.

       Joseph Schmitt, M81137
       Massachusetts Treatment Center
       30 Administration Rd.
       Bridgewater, MA 02324


                                    s/  BRENDAN J. FRIGAULT_____
                                    Brendan J. Frigault


Dated:  April 22, 2008

**EXHIBIT A**



# The Commonwealth of Massachusetts
## Executive Office of Public Safety

## Department of Correction
## Massachusetts Treatment Center
## 30 Administration Road
## Bridgewater, Massachusetts 02324-3230

Tel: (508) 279-8100  Fax: (508) 279-8105
www.mass.gov/doc



**Mitt Romney**
*Governor*

**Kerry Healey**
*Lieutenant Governor*

**Edward A. Flynn**
*Secretary*

**Kathleen M. Dennehy**
*Commissioner*

**James Bender**
*Deputy Commissioner*

**Robert Murphy**
*Superintendent*

**To:**   Robert Murphy, Superintendent

**From:**  Robert D. Clauss, IPS Officer

**Date:**  April 4, 2005

**Re:**   Letters intercepted on April 1, 2005, intended for residents Joseph Schmitt M81137, R▆ M▆▆▆▆▆▆ and R▆▆▆ D▆▆▆▆▆

On Friday, April 1, 2005, Officer John Dankievitch, IPS, intercepted three letters intended for residents Schmitt, M▆▆ and D▆▆. Each letter contained a money order/s for each respective resident and the Director of Security was notified. A decision was made to hold onto the letters until Monday (4-4-05) for direction purposes and that resident D▆▆ would be placed on an approved mail monitor. It should be noted that residents Schmitt and M▆▆ are currently on approved monitors.

On April 4, 2005, resident D▆▆ was placed on an approved mail monitor and the contents of D▆▆'s letter was reviewed. The money orders in question are suspected to have been sent in by the same individual and appeared as follows:

**Addressor:**   L. Bates
                20 East st.
                Attleboro, Ma. 02703

**Addressee:**   R▆▆▆▆▆▆▆▆ M▆
                30 Administration Road
                Bridgewater, Ma. 02324

Postal Money order: serial # 08135459370    year-month day: 2005-03-31
              Post office: 027800      amount: $200.00

Note enclosed: *Hi R▆ Here is 200.00 Use it in good health*
              *Lillian Bates*

**Note: same type of stationary used**

**Addressor:**  Lillian Bates
20 East st.
Attleboro, Ma. 02703

**Addressee:**  Joseph Schmitt
30 Administration Road
Bridgewater, Ma. 02324

Postal Money order:  serial# 08135459381   year-month-day: 2005-03-31
Post Office: 027800   amount: $800.00

Note enclosed: *Hi Joe, enclosed. You will find a moneyorder $800.00*
*Use with good health!*
*Lillian S. Bates*    **Note: same type of stationary used**

**Addressor:**  Mrs. Evelyn Dozier
31 School st.
Taunton, Ma. 02780

**Addressee:**  R█████ D█████
30 Administration Road
Bridgewater, Massachusetts.
02324

1. Postal Money order: serial #08135459403    year-month-day: 2005-03-31
Post office: 027800    amount: $1000.00

2. Postal Money order: serial#08135459392    year-month-day: 2005-03-31
Post office: 027800    amount:  $400.00

Note enclosed:  Hi son, just sitting here thinking about you. Hope you are well. Enclosed
you will find two money orders, one for one thousand and one for four hundred. Please
call your sister Sharon at 508-455-2135 when you get these money orders. Love you,
mother          **Note: same type of stationary used**

     A review of the inmate phone system revealed that a Lillian Bates is currently
listed on resident R█████ D█████s IPIN sheet as his sister. According to the internet, a
Lillian Bates does live at 20 East st. Attleboro, Ma. but a different phone number is listed
than the one on D█████s IPIN list. It should be noted that numerous people were listed for
this address indicating that it may be an apartment complex.

     A check of the number obtained via the Internet revealed that an inmate named
████████████████ (active at MCIC) has the number in question on his IPIN sheet (1-

508-455-2135). It should be noted that written on the stationary found in resident D█████s letter the same number 1-508-455-2135 appeared.

There was no listing found for an Evelyn Dozier at 31 School st Taunton Ma, however, numerous people were listed for this address indicating that it may be an apartment complex. The letters containing the money orders are currently being held in the IPS office pending further direction/investigation.



**411.COM**™     ( View Recent Searches )    Login / Register

| WHITE PAGES | YELLOW PAGES | REVERSE PHONE | REVERSE ADDRESS | AREA CODES | ZIP CODES | ADDRESS BOOK |

BATCH ADDRESS SEARCHES

 Get Started!    **GO**

**Results:** 7 listings matching "20 east street, attleboro, MA"

New Search                    Modify Search                    Printer-Friendly

**BATES, LILIIAN**  more info    *W 84602 Kevin Bates MeIC*    Save/Customize Listing in:
20 East St                                              My AddressBook or Outlook
Attleboro, MA 02703                                     E-mail Listing to Friends
(508) 455-2135

1 of 7

**BEAUPRE, ROBERT**  more info    Save/Customize Listing in:
20 East St                        My AddressBook or Outlook
Attleboro, MA 02703               E-mail Listing to Friends
(508) 226-2136

2 of 7

**DEAVER, ROY B 3RD**  more info    Save/Customize Listing in:
20 East St                          My AddressBook or Outlook
Attleboro, MA 02703                 E-mail Listing to Friends
(508) 226-5823

3 of 7

**DIGIAMPIETRO, AMY**  more info    Save/Customize Listing in:
20 East St                          My AddressBook or Outlook
Attleboro, MA 02703                 E-mail Listing to Friends
(508) 226-1245

4 of 7

**HOM, ERIC**  more info    Save/Customize Listing in:
20 East St                  My AddressBook or Outlook
Attleboro, MA 02703         E-mail Listing to Friends
(508) 226-5295

5 of 7

**DUFFY, R M**  more info    Save/Customize Listing in:
20 1/2 East St               My AddressBook or Outlook
Attleboro, MA 02703          E-mail Listing to Friends
(508) 222-2129

6 of 7

# Default Contract Code
## INMATE CALLING LIST
### Mass Treatment Facility

| Acct. No. | Other ID | PIN | Name | Facility | Phone No. | Person at Phone | Relationship | Status | Allowed |
|---|---|---|---|---|---|---|---|---|---|
| MO9126 | N/A | 193791 | DOZIER, RICHARD | TCMA | 5083243381 | EVELYN DOZIER | MOTHER | A | Y |
| MO9126 | N/A | 193791 | DOZIER, RICHARD | TCMA | 5088802950 | KENNETH DOZIER | BROTHER | A | Y |
| MO9126 | N/A | 193791 | DOZIER, RICHARD | TCMA | 5085848543 | LARRY DOZIER | BROTHER | A | Y |
| MO9126 | N/A | 193791 | DOZIER, RICHARD | TCMA | 5088244667 | AARON DOZIER | BROTHER | A | Y |
| MO9126 | N/A | 193791 | DOZIER, RICHARD | TCMA | 5087313264 | LILLIAN BATES | SISTER | A | Y |
| MO9126 | N/A | 193791 | DOZIER, RICHARD | TCMA | 6175777224 | VALLELY SALLIE | ATTORNEY | A | Y |

END OF DETAIL

Form: IN202WEB  Version: 1.000



Rec'd
4/18/08

Evelyn Dozier
31 School st Apt 911
Taunton MA 02780

© Adam Sharon Rd
3Rd50 Wareon MA. 02329

Hi mom

How ARE doing : good i hope, I don't know what you wrote in that letter. They ARE holding the money order they say they look suspicious. So what did you do to the money order. Because they all holding them for investigation. So i need to know what you said in the Letter; did you check the money order SEE if they legal. Because won't give me my money. Don't say nothing to them about the other guys i mean it. Sometime you have to Listen told you not to put any RETURN ADDRESS. I told you CORRECTIONS is nosie. So write tell what you said in that LETTER. I need to know

god Bless

Zoe

**EXHIBIT B**



*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*

*Department of Correction*
*Massachusetts Treatment Center*
*30 Administration Road*
*Bridgewater, Massachusetts  02324-3230*

*Tel: (508) 279-8100   Fax: (508) 279-8105*
*www.mass.gov/doc*



Mitt Romney
*Governor*

Kerry Healey
*Lieutenant Governor*

Edward A. Flynn
*Secretary*

Kathleen M. Dennehy
*Commissioner*

James Bender
*Acting Deputy Commissioner*

Robert Murphy
*Superintendent*

April 7, 2005

Lillian Bates
20 East Street
Attleboro, MA  02703

RE:   Mail

Dear Ms. Bates:

A letter sent by you to resident Joseph Schmitt (M81137) of the Massachusetts Treatment Center, has been ruled as contraband under 103 CMR 481, Inmate Mail.

The letter contained one money order in the amount of $800.00.  The letter/money order will be retained as evidence pending an investigation.

Should you have any questions, please contact my office.

Sincerely,


Duane J. MacEachern, Deputy Superintendent of Operations

DJM/jai


G:\USR\JAINGARGIOLA\WORD\Deputy Duane\Schmitt Mail.doc

**EXHIBIT C**

TO:   Robert Murphy, Superintendent

FR:   Joseph P. Schmitt, M-81137

DA:   June 3, 2005

RE:   Incoming Personal Funds

Dear Robert Murphy:

On April 1, 2005 this facility received a letter and $800.00 money order for me from Lillian Bates 20 East Street Attleboro, MA. 02703

This money order is being held pending an investigation, according to former Deputy Superintendent Duane MacEachern's April 6, 2005 letter to me.

I am requesting that my money be released and credited to my inmate account.

If you deny my request then I request that you inform me when the alleged investigation is due to be finished and my funds released to me.

Thank you for your prompt response.

Sincerely,

Cc: Attorney Christopher P. LoConto,
    JPS

*R. Waitkevich*
*Ms. determine it*
*money order is still*
*at this facility or*
*it was returned to*
*sender*

## MASSACHUSETTS TREATMENT CENTER

June 13, 2005

Joseph Schmitt, M81137
Massachusetts treatment Center
30 Administration Road
Bridgewater, MA 02324

Dear Mr. Schmitt,

      I have received your letter dated June 3, 2005 regarding a confiscated money order. You have inquired about the handling of this item. Be advised the money order was returned to the sender.

Sincerely,

R. Murphy
Superintendent

Cc:    file

**EXHIBIT E**



# The Commonwealth of Massachusetts
## Executive Office of Public Safety

### Department of Correction
### Massachusetts Treatment Center
### 30 Administration Road
### Bridgewater, Massachusetts  02324-3230



Tel: (508) 279-8100  Fax: (508) 279-8105
www.mass.gov/doc



**Mitt Romney**
*Governor*

**Kerry Healey**
*Lieutenant Governor*

**Edward A. Flynn**
*Secretary*

**Kathleen M. Dennehy**
*Commissioner*

**James Bender**
*Deputy Commissioner*

**Robert Murphy**
*Superintendent*

**To:**   Robert Murphy, Superintendent

**From:** Robert D. Clauss, IPS Officer

**Date:** May 27, 2005

**Re:**   **Resident Joseph Schmitt M81137 alleged that he is being "extorted" by several black residents (**████████████████████████████████████████████████**,** ████████████████████████████**)**

On May 17, 2005, Lt. Michael Kradolfer and Officer Robert D. Clauss, IPS, conducted an interview with resident Joseph Schmitt M81137. This interview was conducted in regard to a fraudulent MCLS check that was made out to resident Schmitt.

At the conclusion of the interview, resident Schmitt had indicated that for the past year he has been "extorted" money from resident ███████████████. He went on to say that he has given resident ██████ approximately $1700.00 so far and that he would send the money out in increments and it would in turn be sent back to resident ████████. When asked, resident Schmitt stated that he has people on the street that handle the transactions for him (would not elaborate).

When questioned, he stated that the reason he had to give resident ███████ money was because of an incident that had taken place approximately one year ago when he was housed in the Minimum Privilege Unit. He claimed that he had called another resident a "nigger" (identified as ██████████████████████) and that the "word" had gotten out.

When asked, resident Schmitt stated that resident ████████ had approached him and told him that the "blacks wanted to fuck him up" but that he (████████) could take care of it. He went on to say that resident ██████ determined that he could pay him $2500.00 and that he would take care of the issue. He stated that he currently gives resident ██████████████ twenty dollars in canteen every week who in turn gives it to resident ██████ as payment toward his "debt."

When questioned, he stated that he has been giving resident ████████ the twenty dollars in

canteen for approximately four-five months now. When asked, he stated that he never reported this to staff because, "What am I gonna do, be labeled a rat or snitch, I'd have to do something like stab the mother fucker." Resident Schmitt retracted the "stab the motherfucker" statement and stated that he said this out of anger and that he really did not mean to say it.

When asked, he stated that he gives resident ███████ "black stuff" such as cookies, lotions and hair gel. He went on to say that he had recently put in a charge slip for $500.00 and that the money will be sent back to this facility. He stated that he put a fictitious address for his attorney, Christopher Loconto, and that it would then be sent back to the facility as legal mail.

He claimed that the Officers do not inspect the legal mail like they are supposed to and that when he gets the check he would give it to resident ███████ who in turn would give it to resident ███████ He stated that resident ███████ would then send it out to his "people on the street" and have it sent back in to ███████'s account. He further stated that located inside a gray folder of his (Schmitt's) was an envelope labeled "extortion payments."

He alleged that the envelope contains handwritten canteen lists that were supplied to him by resident ███████ (lists of canteen items he allegedly had to give out as payment). The slips were reviewed and the ones that had dates on them did match items purchased by resident Schmitt on/near the specified date.

Resident Schmitt denied that he was in fear of his safety and also denied being threatened or assaulted. He further denied having any enemy issues and agreed to sign a population waiver. However, in order to look further into this matter resident Schmitt was placed in the Minimum Privilege Unit.

The Keefe Canteen corporation was contacted and four to six months of canteen receipts were requested for residents Schmitt, ███████████████. Resident Murphy's assigned cell was searched and numerous cosmetic items (shampoo, lotions, gel, soap, etc) were confiscated due to resident ███████ having no documented proof of ownership. When questioned, resident ███████ denied that he was strong-arming anyone and alleged that he got the items by trading his canteen (food) for them.

It should be noted that since January 2005, resident ███████ has ordered canteen once per month ($59.00 avg./except April) and has gotten food items only. Therefore, all of his cosmetic items were confiscated and he was issued an Observation of Behavior report. It should be noted that resident ███████'s and ███████'s assigned cells were also searched but resulted in negative findings.

On May 23, 2005, Officer Robert D. Clauss, IPS, conducted an interview with resident Schmitt. This interview was conducted in regard to a manila envelope found inside his property that contained a previously contrabanded "Time" magazine inside of it.

When questioned, resident Schmitt stated that he had sent the "Time" magazine out because it was deemed contraband. He stated that he had sent the item to his attorney, Marie

McGuirk, at the address he had listed for her. He stated that the magazine was sent back to him because it was not the correct address and he explained that he no longer has Ms. McGuirk as his attorney.

He went on to say that he forgot that he had the magazine and had intended on sending it out to his current attorney, Christopher Loconto. When asked, resident Schmitt denied that he purposely put a fictitious address on the envelope in question and claimed that it was the address he had for Ms. McGuirk.

When questioned about an alleged verbal altercation he had with resident ███████ ████████, resident Schmitt stated that he did have "words" with resident ████████ on the day he got "lugged" (5-17-05). He stated that resident ████████ had come up to his room and that he told him to go away.

He explained that resident ████████ had asked him if he had the "stuff" that was ordered. He stated that resident ████████ told him that if he did not have the two deodorants that it would now be ten dollars more. Resident Schmitt stated that he yelled at resident ████████ but denied threatening him.

When asked, resident Schmitt stated that he gave the two deodorants to resident ████ and that the matter was "resolved." He stated that resident ████████ was supposed to give the deodorants to a resident called "shy town, Chicago (identified as ████████ ██████████)." When asked, resident Schmitt stated that resident ████ was also involved in "extorting" canteen from him. He claimed that approximately three-four weeks ago, resident ████ had come onto his unit and told him that he wanted ten dollars of cosmetics or there would be trouble.

He claimed that he had already given resident ████████ several items to give to resident ████ and that he owed ████ two deodorants. He stated that the deal with resident ████ was a "one time deal" and that the matter was resolved. When asked, resident Schmitt stated that he gave the residents involved his canteen because he does not want any trouble. He claimed that, "I opened up my mouth awhile back and had boasted about having six thousand dollars in my account."

He went on to say that since then, these residents felt that they can get canteen from him without any problem. He claimed that he could handle himself well and that he is not afraid of any of these residents. He stated that he really does not want to give the canteen items to these residents and only does so because he does not want any trouble (civil commitment trial coming in August).

Resident Schmitt stated that the "extortion" actually started when resident ████████ ████████ saw that he had gotten an IRS tax check in the mail. He claimed that because of ████ observation and the "black issues," resident ████████ had then stepped in and told him that he would take care of it for $2500.00. When asked, resident Schmitt stated that he is not in fear of his safety and that he does not want to claim any of these residents as an enemy.

However, he stated that if he were committed, he would not want to reside on the same unit as these residents. Resident Schmitt was told to refrain from giving any resident his canteen items and if he is confronted, he needs to report it so that appropriate action may be taken.

## Conclusion

At this time, resident Schmitt's allegation cannot be substantiated, however, due to the amount of cosmetic items confiscated from resident ███████ this matter needs to be closely monitored. Also, a one-year review (5/01/04-5/27/05) of resident Schmitt's transaction reports was conducted. On November 2, 2004 ($150.00) and November 9, 2004 ($75.00), resident Schmitt had sent funds to a former resident, ███████████

It should be noted that resident Schmitt is currently on an approved mail monitor and it was revealed that resident Schmitt had asked ████████ to open an account for the both of them (has since asked ████████ to return the funds). There was no evidence found in resident Schmitt's transaction reports that could support his allegation of sending out money in increments for resident ███████ It should be noted that resident Schmitt is currently under investigation pertaining to other matters that also involve the residents that are listed in this report.

## Findings

- Resident Schmitt alleged that he is being "extorted" canteen/money from black residents.

- Resident ███████ was found with numerous cosmetic items that he could not account for with canteen receipts. He did not deny that the items were not his but he claimed that the items were obtained by trading his food items for them (items removed/OBR issued).

- Resident Schmitt averages over fifty dollars spent on canteen each week.

- An envelope (labeled "extortion payments") was recovered inside Schmitt's property and it did contain handwritten canteen lists.

- A year of resident Schmitt's financial transactions was reviewed and they do not support his allegation that he has sent out increments of money to resident ███████

**Recommendations**

- That the conflicts involving residents ██████████████ be approved

- That this matter continue to be closely monitored

- That frequent canteen searches be conducted with all involved

- That resident Schmitt's housing situation be addressed

INMATE WAIVER FORM    (Attachment 4)

INSTITUTION: _Treatment Center_

I wish to be placed or remain in general population at _Treatment Center._
Any and all prior problems I have had with other inmates have been
resolved.

I hereby relieve the Administration of all responsibilities for my
safety when I am returned to general population.

_Joseph Schmitt_    _M81137_    _2-2-203_
Inmate's Name (printed)    Commitment #    Room #

_[signature]_    _5-17-05_
Inmate's Signature    Date

_[signature]_    _5-17-05_
Witness Signature/Title    Date

REASON FOR WAIVER:
_Claims he is being extorted money/canteen_
_from resident Anthony Norman._

**MASSACHUSETTS TREATMENT CENTER**

**Investigation Waiver**

**Attachment A**

Resident: _Joseph Schmitt_ Commitment #: _M81137_ Unit: _MPU_

This notice shall waive all procedural time limits as defined in 103 CMR 431, Observation of Behavior Reports, section 431. 13. An investigation has been ordered due to information that you may have violated a rule of the institution and/or violated a Law of the Commonwealth. This investigation will not be completed within a twenty-four hour period. You will be advised of the finding upon the conclusion of the investigation.

You may be placed in the Minimum Privilege Unit, on Awaiting Action/Administrative Segregation status, if your continued presence in the general population poses a serious threat to person (s), property or the security of the institution.

Your status in the Minimum Privilege Unit will be reviewed as defined in 103 MTC 423, Minimum Privilege Unit.

_____    _5/17/05_
**Superintendent (Designee)**            **Date**

I hereby acknowledge receipt of this notice.

_____    _5-17-05_
**Resident**                             **Date/Time**

I have personally delivered this waiver to the above named resident.

_Robert J. Clauss_              _5-17-05  2:30 p.m._
**Officer**                              **Date/Time**

☐    **Resident refused to sign.**

Attachment to 103 CMR 431 – Att. A

**INMATE TO INMATE CONFLICT FORM (Attachment 1)**

Inmate
Name: _Joseph Schmitt_    # _MF1137_

May be in conflict with:
Inmate
Name: ███████████████    # ██████████

Source: _Joseph Schmitt_

The reason for the conflict is:
_Alleged That_ ██████████ _is extorting money from him (approximately $2500.00) and That he has paid him approximately $1700.00 so far. He claimed That he is now paying resident_ ██████ _via Canteen (Tyrone Murphy is go between)._

Prepared
by: _Robert D. Clauss_    Date: _5/20/05_

(Attach any relevant reports, i.e., D-Reports, Incident Reports)

**Institution IPS Review**
It is recommended that this conflict be:    ☒ **Approved**    ☐ **Denied**
(If denied, explain below:)

_____

_____

_____

_____

☒ **Separate by housing**    ☐ **Separate by facility**

Name: _Robert D. Clauss_  Title: _IPS officer_ Date: _May 27, 2005_

**Review by Superintendent**

The conflict as stated above is:    ☐ **Approved**    ☐ **Denied**
(If denied, explain below:)

_____

Superintendent: _[signature]_    Date: _6/8/05_

### INMATE TO INMATE CONFLICT FORM (Attachment 1)

Inmate
Name: *Joseph Schmitt*                    # *MF1137*

May be in conflict with:
Inmate
Name: ██████████████████        # ████████████

Source: *Joseph Schmitt*

The reason for the conflict is:
*Alleged That resident* ██████████ *gets $0.00 in*
*Canteen As payment toward resident* ████████████
████████████ *unpaid debt.*                    (

Prepared
by: *Robert D. Clauss*            Date: *5/30/05*

(Attach any relevant reports, i.e., D-Reports, Incident Reports)

**Institution IPS Review**
It is recommended that this conflict be:    ☒ **Approved**    ☐ **Denied**
(If denied, explain below:)

_____

_____

_____

_____

☒ **Separate by housing**            ☐ **Separate by facility**

Name: *Robert D. Clauss* Title: *IPS Office* Date: *5/27/05*

**Review by Superintendent**

The conflict as stated above is:    ☒ **Approved**    ☐ **Denied**
(If denied, explain below:)

_____

Superintendent: *[signature]*          Date: *6/8/0*

**INMATE TO INMATE CONFLICT FORM (Attachment 1)**

Inmate
Name: _Joseph Schmsro_          # _M81137_

May be in conflict with:
Inmate
Name: ██████████████          # ████████████

Source: _Joseph Schmstr_

The reason for the conflict is:
_Alleged That resident ███████ is behind_
_him being "extoted" for canteen. Alleged That_
_██████ Jew That he received a check from The IRS, spread_
_$ It to The black population_

Prepared
by: _Robert J. Clauss_          Date: _5/03/05_

_(Attach any relevant reports, i.e., D-Reports, Incident Reports)_

**Institution IPS Review**
It is recommended that this conflict be:      ☐ Approved   ☒ Denied
(If denied, explain below:)
_Resident Schmsro Claimed That ███████ was responsible_
_for him being "extoted." Resident Schmsro never_
_Indicated That he was threatened or extorted_
_by resident ██████_

☐ **Separate by housing**         ☐ **Separate by facility**

Name: _Robert J. Clauss_ Title: _IPS officer_ Date: _5/27/05_

**Review by Superintendent**

The conflict as stated above is:      ☐ Approved   ☒ Denied
(If denied, explain below:)

Superintendent _WWW_          Date: _6/3/05_

## INMATE TO INMATE CONFLICT FORM (Attachment 1)

Inmate
Name: _Joseph Schmitt_    #  _M81137_

May be in conflict with:
Inmate
Name: ███████████████    #  _M81248_

Source: _Joseph Schmitt_

The reason for the conflict is: ████████

_Alleged That residons_ ████ _told him That
he wanted ten dollars in cosmetics or there
would be trouble._

Prepared
by: _Robert J. Claws_    Date: _5/23/05_

(Attach any relevant reports, i.e., D-Reports, Incident Reports)

**Institution IPS Review**
It is recommended that this conflict be:    ☒ Approved    ☐ Denied
(If denied, explain below:)

_____

_____

_____

_____

☒ **Separate by housing**    ☐ **Separate by facility**

Name: _Robert J. Claws_ Title: _IPS Officer_ Date: _5/23/05_

**Review by Superintendent**

The conflict as stated above is:    ☐ Approved    ☐ Denied
(If denied, explain below:)

_____

_____

Superintendent: _____    Date: _____

**EXHIBIT F**





*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*

*Department of Correction*
*Massachusetts Treatment Center*
*30 Administration Road*
*Bridgewater, Massachusetts  02324-3230*

*Tel: (508) 279-8100  Fax: (508) 279-8105*

*www.mass.gov/doc*

Mitt Romney
*Governor*

Kerry Healey
*Lieutenant Governor*

Edward A. Flynn
*Secretary*

Kathleen M. Dennehy
*Commissioner*

James Bender
*Deputy Commissioner*

Robert Murphy
*Superintendent*

**To:**   Joseph Schmitt M81137

**From:** Robert D. Clauss, IPS Officer

**Date:** May 23, 2005

**Re:**    **Confiscated property**

On Wednesday, May 18, 2005, Officer Robert D. Clauss, IPS, searched through the contents of resident Schmitt's property. The following items were confiscated and are being held in the IPS office pending investigation:

1-   Address book containing names, suspected addresses of relatives/acquaintances of residents and social sec.#'s of residents housed at this facility

1-   white envelope with 2004 1040 tax form filled out in Schmitt's name (return address listed as 364 Rindge Avenue Cambridge Mass 02140) and a 1099 form in Schmitt's name (return address listed as 14 Main street Medford Mass 02155)

1-   2004 1040A tax book

1-   2004 1040EZ tax book

1-   2003 1040EZ tax form

1-   2003 1099 Copy B form

3-   pages torn out of a tax form book

1-   manila envelope with a 2004 1099 tax form enclosed

1-   magazine photo of a young boy taped to a piece of cardboard

1-    National Geographic magazine cover enclosed with numerous magazine cut-outs of young pre-adolescent children, predominantly young boys (found inside folder labeled Rock Thatcher)

1-    magazine picture of a young boy fishing with others (found inside envelope labeled family photos)

1-    magazine picture with numerous scantily clad/nude women on it

1-    white lined paper with the names and social security numbers of four residents currently at the Treatment Center (note: one of the names also included an outside address/this address was also used by Schmitt on one of his tax forms)

2-    2004 1040EZ forms

1-    2004 1099 tax form

1-    Manila envelope that was originally sent to an attorney (Marie McGuirk) but was sent back due to an insufficient address. Inside was a Time magazine that was contrabanded at this facility due to having a photo of a nude child

On May 20, 2005, resident Schmitt was sent a notice that informed him that numerous items (not specified) were confiscated and are being retained in the IPS office pending investigation. It should be noted that resident Schmitt's address book (names/soc.#'s) along with small pieces of paper containing addresses/soc.#'s were copied and given to an IRS agent, Kristina O'Connell.

It is also recommended that the items pertaining to the young pre-adolescent children be photocopied and sent to the respective District Attorney's office.




The Commonwealth of Massachusetts
Executive Office of Public Safety

Department of Correction
Massachusetts Treatment Center
30 Administration Road
Bridgewater, Massachusetts 02324-3230

Tel: (508) 279-8100  Fax: (508) 279-8105
www.mass.gov/doc

**Mitt Romney**
*Governor*

**Kerry Healey**
*Lieutenant Governor*

**Edward A. Flynn**
*Secretary*

**Kathleen M. Dennehy**
*Commissioner*

**James Bender**
*Deputy Commissioner*

**Robert Murphy**
*Superintendent*

February 17, 2006

Joseph Schmitt, M81137
Massachusetts Treatment Center
30 Administration Road
Bridgewater, MA 02324

Dear Mr. Schmitt,

I have received your letter dated January 24, 2006. In your letter you stated that the material which was listed on the official itemized list which I provided to you on July 11, 2005 was not used in trial and must be returned to you or sent out.

Be advised that the items will be held for a three year period pursuant to 103 DOC 506, Search Policy. The items will be released upon determination by the General Counsel.

I trust this response addresses your concerns.

Sincerely,

Robert Murphy
Superintendent

RM/jd

CC:   Resident File
      File