UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2005-11348
and NO. 2005-11603
(Consolidated)

JOSEPH SCHMITT,
        Plaintiff,

v.

ROBERT MURPHY, ET AL.,
        Defendants.

## DEFENDANTS' SECOND MOTION TO DISMISS

### INTRODUCTION

On April 22, 2008, the Court (Gertner, J.) entered an order partially granting the Plaintiff's Motion for Summary Judgment as to liability, due to the Defendants' failure to file a timely response to the Plaintiff's motion. *See* Docket Entry dated April 22, 2008. The Defendants' sought reconsideration of that order, on the grounds that failure to file was wholly caused by an oversight by counsel, who mistakenly thought he had filed a response months before. *See* Docket Entry No. 53.

Also on April 22, 2008, the Defendants filed a Motion to Dismiss or, in the Alternative, Motion and Memorandum for Summary Judgment. *See* Docket Entry No. 54. In that motion, the Defendants argued that all of the Plaintiff's claims are subject either to outright dismissal or summary judgment in the Defendants' favor. In support of their argument, the Defendants pointed out that the Plaintiff failed to state a claim under 42 U.S.C. § 1983, because A) he failed to allege that any Defendant directly deprived him of a federally protected right; and B) he failed to establish any supervisory liability by

failing to show deliberate indifference or subjective knowledge of a substantial risk of harm.  The Defendants also argued that they are entitled to qualified immunity for the performance of the discretionary functions of their employment.  The Defendants further showed that they followed all applicable regulations, and thus did not violate any of the Plaintiff's substantive rights.  The Defendants re-state and stand by each of the arguments and statements set forth in their motion.

On June 12, 2008, the Court (Gertner, J.) held a status conference on the issue of whether to accept the Defendants' Motion for Reconsideration. *See* Docket.  At that hearing, Judge Gertner raised questions regarding the nature of the Plaintiff's claims, indicating that the claims relate to property, and post-deprivation procedures, as discussed in *Parratt v. Taylor*, 451 U.S. 527 (1981), *Hudson v. Palmer,* 468 U.S. 517 (1984), and their progeny.  The Court gave both parties until July 14, 2008 to file briefs on this issue. *See* Docket Entry dated June 12, 2008.

I.  **TO THE EXTENT THAT THE PLAINTIFF HAS RAISED A TORT CLAIM REGARDING HIS PROPERTY, SUCH CLAIM IS BARRED BECAUSE SUFFICIENT POST-DEPRIVATION REMEDIES EXIST OUTSIDE OF FEDERAL COURT.**

As an initial matter, a suit against a State under § 1983 is barred by the Eleventh Amendment to the United States Constitution unless the State has waived its sovereign immunity.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-66 (1989); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Woodbridge v. Worcester State Hosp.*, 384 Mass. 38, 44-45 n. 7 (1981).  The plaintiff's § 1983 claim against the Commonwealth is, therefore, barred as a matter of law.

Turning to the Plaintiff's claims against the DOC Defendants, the Plaintiff seeks only monetary damages for alleged violations of 42 U.S.C. § 1983. To state a claim for monetary damages under 42 U.S.C. § 1983, a plaintiff must allege that a "person" acting under color of law deprived him of a federal statutory or constitutional right. *See* 42 U.S.C. § 1983. A state agency, such as DOC, is not a "person" within the meaning of § 1983. *See Will*, 491 U.S. at 70. Likewise, state officials acting in their official capacities are not "persons" within the meaning of § 1983 for purposes of monetary damages. *See Will*, 491 U.S. at 71 ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office … As such, it is not different from a suit against the State itself"); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The Plaintiff's claims against the DOC Defendants, in their official capacities, fail as a matter of law.

To the extent that the Plaintiff has raised a tort claim regarding the deprivation of property, such a claim must be dismissed because appropriate post-deprivation remedies exist in state court. Specifically, the Plaintiff must raise such claims in accordance with M.G.L. c. 258, the Massachusetts Tort Claims Act ("MTCA").

The Supreme Court has consistently held that the availability of a state-provided post-deprivation remedy (e.g., state tort law) forecloses § 1983 as a remedy. If the deprivation is not the result of some established policy or procedure, and the state cannot predict precisely when the deprivation will occur, it is enough that post-deprivation remedies are available. *Parratt v. Taylor*, 451 U.S. 527, 530-31 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 344 (1986)); *Hudson v. Palmer*, 468 U.S. 517 (1984).

In *Hudson*, the Supreme Court noted that prisoners do not have a reasonable expectation of privacy in their cells, and therefore, "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson*, 468 U.S. at 526. The Supreme Court went on to hold that "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Hudson*, 468 U.S. at 533. These principles are a reinforcement of those set forth in *Parratt*, five years earlier. There, a prisoner brought a § 1983 action against prison officials alleging deprivation of property without due process because prison staff lost his mail order hobby material delivered to the prison. Although this prisoner asserted a deprivation of property by persons acting under color of state law, he did not state a § 1983 claim for a variety of reasons, including that the state had an adequate post-deprivation procedure which could have compensated the prisoner, and which was sufficient to satisfy the requirements of due process. *Parratt*, 451 U.S. at 543-44. Obviously, since the loss was unpredictable, the Court focused on the pre-deprivation element of due process.

The First Circuit has followed this doctrine and applied it in multiple situations. *See Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525, 535 (1st Cir. 1995)(no § 1983 claim lies for "random and unauthorized" conduct of state officials because the state cannot "anticipate and control [such conduct] in advance"); *Reid v. State of N.H.*, 56

F.3d 332, 336 n.8 (1st Cir. 1995)(no § 1983 claim lies for procedural due process violation given adequate state-law remedy); *see also Temple v. Marlborough Division of the District Court Department*, 395 Mass. 117, 120 (1985). In *Watson v. Caton*, 984 F.2d 537 (1st Cir. 1993), the Court rejected a prisoner's § 1983 claim that a correction officer destroyed contraband property received by the mail without the prison notifying the prisoner and providing a "non-allowable property sheet," which the prisoner alleged was "normally issued" in such situations. *Watson*, 984 F.2d at 539. Because the complaint alleged that the officer acted on his own, suggesting a deviation from and not a reflection of state policy, the claim had no basis under § 1983. *Watson*, 984 F.2d at 541.

Here, the Plaintiff claims, at best, 1) that a money order in the amount of $800.00 was not processed; and 2) that certain items were removed from his property as a part of an investigation and were allegedly not returned. Complaint 05-11603, ¶¶ 10-20; Complaint 05-11348, ¶¶ 13-20. The Plaintiff characterizes these allegations as improper failures to comply with established regulations. Complaint 05-11603, ¶¶ 24-33; Complaint 05-11348, ¶¶ 14-36. Thus, to the extent that the Plaintiff claims that his property was improperly confiscated, his claim can be characterized as negligent or intentional deprivations by state employees that can not be anticipated or controlled in advance. His claims are therefore barred by the *Hudson-Parratt* doctrine, if there are post-deprivation remedies available.

In Massachusetts, state tort law, codified in the MTCA, provides the Plaintiff with an adequate remedy to challenge the negligent or intentional deprivation of property. The Massachusetts Supereme Judicial Court has long held that the MTCA contains no express nor implicit consent for suit against the Commonwealth in federal courts. *Irwin v.*

*Commissioner of Dept. of Youth Services*, 388 Mass. 810, 819-20 (1983). The First Circuit has continued to recognize that tort claims against the Commonwealth must be raised in state courts. *Caisse v. DuBois*, 346 F.3d 213, 218 (2003). Thus, while the Plaintiff has adequate remedies in state court, he is barred from litigating his tort claims in federal court.

The Plaintiff can not prevail on a § 1983 claim, because his claims are barred by the *Hudson-Parratt* doctrine. His claims should therefore be dismissed.

## II.     THE ORIGINAL CONFISCATION OF THE PLAINTIFF'S MAIL WAS LEGALLY JUSTIFIED AND EXECUTED PROPERLY UNDER THE INMATE MAIL REGULATIONS.

At the June 12, 2008 status hearing, the Court inquired about the initial reason for the mail monitor that resulted in the confiscation of the $800.00 money order that is one of the subjects of this action. In response to that inquiry, the Defendants state that on February 5, 2008, the Plaintiff was placed on a mail monitor pursuant to 103 CMR 481.15 – <u>Inmate Mail</u>, which reads, in relevant part:

> (2) The superintendent may authorize the reading, censoring or disapproval of incoming non-privileged correspondence only to prevent interference with institutional goals of security, order, discipline, or if it might facilitate, encourage or instruct in criminal activity; disapproval shall not be based upon an employee's personal views of the merit of such correspondence. The deputy superintendent or his designee may disapprove receipt by an inmate of non-privileged correspondence, the contents of which fall as a whole or in significant part into any one of the following categories:
>   (a) Depicts or describes procedures for the construction or use of weapons, ammunition,   bombs or incendiary devices;
>   (b) Depicts, describes, or encourages methods of escape from correctional facilities, or contains blueprints, drawings or similar descriptions of any correctional institution within the Commonwealth;
>   (c) Depicts or describes procedures for the brewing of alcoholic beverages, or the manufacture of drugs;

      (d) Is written in code;
      (e) Depicts, describes or encourages activities that may lead to the use of physical violence or group disruption;
      (f) Encourages or instructs in the commission of criminal activity;
      (g) Sexually explicit material or material which features nudity which by its nature or content poses a threat to the security, good order, or discipline of the institution.

This mail monitor request was generated "as a result of the continuation needed to monitor resident Schmitt's mail for any involvement in an IRS scam." *See Exhibit A*, Request for Incoming/Outgoing Non-privileged Mail Monitor. The monitor was approved for a period of 90 days, beginning on February 7, 2005 and ending on May 8, 2005. *See Exhibit A*. The monitor was necessary to investigate the Plaintiff's participation in activities that encouraged criminal activity.[1] *See Exhibit A*.

## CONCLUSION

The Defendants are entitled to summary judgment on all claims because the Plaintiff has failed to state a claim upon which relief may be granted. The Plaintiff failed to claim that the Defendants specifically denied him any protected constitutional right. The Defendants acted in all matters in strict accordance with the applicable policies and regulations. To the extent that the Plaintiff raises a claim alleging the intentional or negligent deprivation of property, such claim fails because state post-deprivation remedies are available.

---

[1] Further documents supporting the need for the mail monitor are attached hereto as *Exhibit B, Memorandum, Dated February 3, 2005,* and *Exhibit C, Memorandum, Dated February 28, 2005.*

        Respectfully Submitted

        by Defendants Murray, Brady and Henry,

        NANCY ANKERS WHITE
        Special Assistant Attorney General

        by:    s/ BRENDAN J. FRIGAULT
                Brendan J. Frigault, Counsel
                BBO No. 647669
                Department of Correction
                Massachusetts Treatment Center
                30 Administration Road
                Bridgewater, Massachusetts 02324
                (508) 279-8185
Dated: July 14, 2008    FAX: (508) 279-8181


## CERTIFICATE OF SERVICE

    I hereby certify that I caused a true copy of the attached document to be served upon the Petitioner through intra-facility mail.

    Joseph Schmitt, M81137
    Massachusetts Treatment Center
    30 Administration Rd.
    Bridgewater, MA 02324

        s/ BRENDAN J. FRIGAULT
        Brendan J. Frigault

Dated: July 14, 2008

**EXHIBIT A**




## The Commonwealth of Massachusetts
## Executive Office of Public Safety

### Department of Correction
### Massachusetts Treatment Center
### 30 Administration Road
### Bridgewater, Massachusetts 02324-3230

Tel: (508) 279-8100  Fax: (508) 279-8105
www.mass.gov/doc

Mitt Romney
*Governor*

Kerry Healey
*Lieutenant Governor*

Edward A. Flynn
*Secretary*

Kathleen M. Dennehy
*Commissioner*

James Bender
*Deputy Commissioner*

Robert Murphy
*Superintendent*

TO:     Robert Murphy, Superintendent

FROM:   Robert D. Clauss, IPS Officer

DATE:   February 7, 2005

RE:     **Request for Incoming/Outgoing Non-Privileged Mail Monitor**

This request is generated in order to renew an incoming and outgoing non-privileged mail monitor of any mail addressed to/from resident Joseph Schmitt M81137.

This request was generated as a result of the continuation needed to monitor resident Schmitt's mail for any involvement in an IRS tax scam. I request your authorization of a mail monitor for a period of ninety days beginning on February 7, 2005 and ending on May 8, 2005. This monitor will be conducted in compliance with the 103 CMR 481 Mail policy.

Approved _____

Denied   _____




# The Commonwealth of Massachusetts
## Executive Office of Public Safety
### Department of Correction
### Massachusetts Treatment Center
### 30 Administration Road
### Bridgewater, Massachusetts 02324-3230

Tel: (508) 279-8100   Fax: (508) 279-8105
www.mass.gov/doc

**Mitt Romney**
*Governor*

**Kerry Healey**
*Lieutenant Governor*

**Edward A. Flynn**
*Secretary*

**Kathleen M. Dennehy**
*Commissioner*

**James Bender**
*Deputy Commissioner*

**Robert Murphy**
*Superintendent*

**To:** Robert Murphy, Superintendent

**From:** Robert D. Clauss, IPS Officer

**Date:** February 3, 2005

**Re:** **IRS tax scam**

Through the interview and approved mail monitor process, the MTC IPS team has continued to develop information pertaining to an IRS tax scam. It has been determined that this scam has grown and that outside individuals are involved in receiving/processing the funds that are procured. Resident Schmitt has also come forward and stated that he is willing to provide significant information pertaining to the tax scam.

He agreed to document this information in writing and that he would send it to Lt. Michael Kradolfer (OIS Internal Affairs). However, resident Schmitt has recently indicated that he would send the information out as soon as it was approved by his attorney (Marie McGuirk). At this time, the following individuals are suspected as being involved in the IRS scam:

**Name**

(L)Joseph Schmitt    M81137





Note: An asterisk before the name indicates that this individual was recently suspected as participating in the IRS tax scam. The (L) symbol designates the leader/orchestrator of the tax scam.

In closing, we will continue to monitor this matter and document any further information as it develops. However, it is recommended that the Office of Investigative Services is updated on this matter and that permission is given to provide the aforementioned residents' names to the Internal Revenue Service.




# The Commonwealth of Massachusetts
## Executive Office of Public Safety
### Department of Correction
### Massachusetts Treatment Center
### 30 Administration Road
### Bridgewater, Massachusetts 02324-3230

Tel: (508) 279-8100   Fax: (508) 279-8105
www.mass.gov/doc

**Mitt Romney**
*Governor*

**Kerry Healey**
*Lieutenant Governor*

**Edward A. Flynn**
*Secretary*

**Kathleen M. Dennehy**
*Commissioner*

**James Bender**
*Deputy Commissioner*

**Robert Murphy**
*Superintendent*

---

**To:**   Robert Murphy, Superintendent

**From:** Robert D. Clauss, IPS Officer

**Date:** February 28, 2005

**Re:**   **IRS tax scam**

The Treatment Center IPS team have been monitoring numerous residents who are suspected to be involved in an elaborate tax refund scheme. The scheme initially involved resident Joseph Schmitt, who had utilized a company titled and listed as follows:

Sportomatic LTD
Suite 212
170 Hamilton Avenue
White Plains, New York

**\* It should be noted that the aforementioned address lists forty-six businesses at this address (office building) and Sportomatic LTD was not listed.**

Resident Schmitt had submitted 1040 EZ tax forms for the 2002/2003 tax years and had received refunds of $1727.00 and $1744.00 respectively. Resident Schmitt had listed that his occupation was a "freelance writer" and he had also listed his taxpayer identification number for both the federal and state as: 13-3743882.

Through the mail monitor process, it was verified that some of the other individuals involved have used the same company (Sportomatic) and taxpayer identification numbers (13-3743882) that resident Schmitt had used to obtain his refunds (D███ B███ and S███ B███). However, it is also suspected that all of the individuals involved have also used these same numbers.

The following is a list of individuals that we suspect are involved in the tax refund scheme:

| **Name** | | **Social #** |
|---|---|---|
| Joseph Schmitt | M81137 | 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 |



The following information lists the individuals whom we suspect/have knowledge of receiving money that was sent by an outside address via an IRS tax refund:

**Joseph Schmitt, D███ R███, A███ N███, J███ G███, V███ J███ & ?..**

(unknown, numerous false names were used for this address, however, possibly C███ G███ sister of J███ G███, may reside at this address)
1 Shandon Road #268
Dorchester, Ma

**R███ T███, A███ H███ and P███ S███ & ?..**

J███ M███████ (T███'s mother)
69 Phillips st
Greenfield, Ma. 01301

**D███ B███, J███ V███, S███ B███ & ?..**

G███ B███ (B███'s mother)
16 Veterans Circle
South Graton, Ma. 01560

**T███ M███ and R███ M███ & ?..**





J███ W███ (M███'s mother)
66 Austin St. Apt 2
Worcester, Ma. 01609

In closing, it is recommended that this information be furnished to the Internal Revenue Service in order to expedite their current investigation involving resident Schmitt's tax refunds. This situation will continue to be monitored and all new information that is developed will continue to be handled accordingly until otherwise directed.