UNITED STATES DISTRICT COURT
District of Massachusetts


Case No.: 2005-11348-NG


JOSEPH P. SCHMITT, pro se.,
Plaintiff


v.


ROBERT MURPHY, et al.,
Defendants


PRO SE PLAINTIFF'S OPPOSITION TO DEFENDANTS'
SECOND MOTION TO DISMISS


   Now comes the pro se plaintiff, Joseph P. Schmitt, and opposes the defendants' second motion to dismiss for the foregoing reasons:

   The defendants continue to introduce exhibits that alleges this pro se plaintiff is somehow involved in an **unproven** tax scam. At no time has any defendant been able to show that the pro se plaintiff, or for that matter any of the suspected individuals that criminal charges have ever been pressed by the IRS or any other U.S. Government Agency.

   Plaintiff does not and never will deny that he received tax refunds related to his freelance writings for Sportomatic LTD. The defendants have authored numerous disciplinary reports against the pro se plaintiff for authoring, selling and receiving money for adult porn stories. Now to use this information in such a twisted manner, is very simply a typical DOC Legal Department stunt.

   The bottom line of this case is that the defendants violated the pro se plaintiff's rights by controbanding his personal funds, sending (allegeding) the funds back to the sender, failing to follow their very own policies.

   Defendants state that pro se plaintiff's claim can be characterized as negligent or intentional deprivation by state employees that can not be anticipated or controlled in advance. This assertion is simply wrong. The defendants very knowingly placed the pro se plaintiff (and many other civilly committed persons) on a mail monitor as stated in their very own pleadings. This shows anticipation and the ability to control the situation. As such the claims are not barred by the Hudson-Parratt doctrine, if there are post-deprivation remedies available.

Plaintiff clearly is not an attorney. However, he is of average intelligence and finds it very difficult to comprehend how the defendants can make the claim that pro se plaintiff failed to state a claim under 42 U.S.C. sec. 1983, because A) he failed to allege that any defendant directly deprived him of a federally protected right; and B) he failed to establish any supervisory liability by failing to show deliberate indifferance or subjective knowledge of a substantial risk of harm.

The defendants received funds on my behalf and instead of placing said funds on my personal account as the CMR for inmate funds clearly dictates, they took it upon themselves to ignore the policy and allegedly sent my funds back to Lillian Bates without my express consent.

Plaintiff attached the relevant parts of 103-CMR-405.12 and 103-CMR-481.15 &16.

Defendants never gave the pro se plaintiff the opportunity to appeal the decision to have the funds returned to sender as 103-CMR-481.16 clearly states is plaintiff's right.

As stated in the original complaint, the defendants violated the federal rights of the pro se plaintiff. The very fact that U.S. Mail is the subject matter puts this case in a federal lighting. Constitutional rights of due process, freedom of speech, are at issue.

The defendants acted knowingly in violation of the very policies they now claim to have followed. They claim they have some sort of immunity because they allegedly followed policy. As state employees they all have the duty to be aware of present laws and rulings regarding issues at hand. They can not claim they did not know their actions violate my rights which are clearly established by letter of law.

This case has been dragged out by the defendants, who admit to having received my $800.00 and allegedly returning said funds. They can not prove that the funds were ever mailed out to Lillian Bates. They can not prove any of their slanderous allegations that pro se plaintiff has ever been charged with any tax scam charges. The only thing they can prove however is the fact that they issued D-reports against me for earning funds from adult porn publisher which in any reasonable persons view explains the fact that plaintiff received tax refunds in 2002 and 2003. As far as other people using the same tax payer number, this can be very easily explained and proven. Plaintiff has filed numerous law suits against the defendants for allowing inmates access to his personal property and as a direct result personal property was stolen. If such personal papers were used in a criminal manner by others, this is not the plaintiff's concerns, nor is it his responsibility to prosecute.

The pro se plaintiff brought this complaint against the defendants in 2005. The case has merit and should not be dragged out as it is being dragged out.

The defendants have again waited until the very last minut to submit their motion to the palintiff.

Due process is a substantive right and by not adhereing to their own policies, the defendants have willingly and deliberately violated the pro se plaintiff's substantive rights, and as such they have no immunity in this very simple case.

Another major factor in this case is that the pro se plaintiff is not a prisoner at any time relevant to the complaint. He is a civil detainee at the times described in the complaint and as such he has a wider range of rights. The defendants are charged with knowing this and ensuring that they do not violate my rights.

Defendants irroneously allege that all claims against the defendants in their official capacities must fail as a matter of law. Plaintiff's claims against the defendants are against them in both their official and individual capacities. When a DOC official willfully violates standing policies or laws they do not enjoy immunity whether they are sued individually or officially. Immunity is not an appropriate defense in this case.

The deprivations suffered by the pro se plaintiff are very much the result of the defendants failure to comply with their own policies, which carry the force of law, and as such a 42 USC 1983 is an appropriate remedy, especially when the case is based on and or including violations of federally protected and established rights.

**IN CONCLUSSION:** Plaintiff has exhausted his legal knowlege and ability with this case. Furthermore he is facing a section 9 trial to regain his life and liberty in September 2008. This case hase stretched out over three years when in fact it should have been resolved long ago in favor of the pro se plaintiff. Plaintiff begs this Honorable Court protect his rights in this case and review the entire case very broadly as plaintiff may not have presented everything perfectly, but it is his belief that his case is presented clearly enough for the court and defendants to understand any and all aspects required to be subjected to a verdict in his favor, and to simply recover the $800.00 unlawfully removed from him, and for damages for the blatant violations of his constitutionally protected rights.

Dated: July 16, 2008

Submitted By:
Joseph P. Schmitt, Pro se
Plaintiff

Ma. Treatment Center
30 Administration Road
Bridgewater, MA. 02324-3230

**ATTACHMENTS: EXHIBIT "A" & "B"**

CERTIFICATE OF SERVICE

Plaintiff hereby states that a copy of the above was duly served upon Brendan J. Frigault on July 17, 2008 via inter facility mail.

_____
Joseph P. Schmitt, pro se
Plaintiff

MTC-C- LAW LIBRARY

103 CMR 481.00    INMATE MAIL

SECTION                                                    <u>EXHIBIT "A"</u>

481.01    Purpose
481.02    Authorization
481.03    Cancellation
481.04    Applicability
481.05    Access to Regulations
481.06    Definitions
481.07    Institutional Procedures
481.08    Collection and Distribution of Mail
481.09    Amount of Mail
481.10    Free Postage for Indigent Inmates
481.11    Privileged Mail
481.12    Identification and Processing of Privileged Mail
481.13    Inspection of Non-Privileged Correspondence and Packages
481.14    Reading/Disapproval of Outgoing Non-Privileged Correspondence
481.15    Reading/Censoring/Disapproval of Incoming Non-Privileged Correspondence/ Publications
481.16    Procedural Requirements for Disapproval of Incoming Correspondence/ Publications
481.17    Procedural Requirements for Disapproval of Outgoing Mail
481.18    Return Address on Outgoing Mail
481.19    COD Mail Prohibited
481.20    Prohibited Correspondence
481.21    Prohibition on Inmate-to-Inmate Correspondence
481.22    Forwarding Mail
481.23    Time Limits
481.24    Emergencies
481.25    Responsible Staff
481.26    Annual Review Date
481.27    Severability Clause

481.01    Purpose

The purpose of 103 CMR 481.00 is to establish rules governing the sending and receiving of mail by inmates confined in state correctional institutions. The Department recognizes the importance of the use of the mail by inmates to maintain appropriate contact with the community.

481.02    Authorization

103 CMR 481.00 is promulgated pursuant to M.G.L. c. 124, s.1(b), 1(c), 1(q) and c. 127, s.87. 103 CMR 481.00 is not intended to

(3) No employee may read inmate mail unless authorized to do so by the commissioner or the superintendent.

(4) Any employee reading inmate mail pursuant to the commissioner's or superintendent's authorization shall record such action in a log book maintained for such purpose.

481.15   Reading/Censoring/Disapproval of Incoming Non-Privileged Correspondence/ Publications

(1) <u>Incoming Correspondence-</u>   It is the policy of the Massachusetts Department of Correction not to read, censor, or disapprove incoming correspondence, except where necessary to protect legitimate governmental interests.

(2) The superintendent may authorize the reading, censoring or disapproval of incoming non-privileged correspondence only to prevent interference with institutional goals of security, order, discipline, or if it might facilitate, encourage or instruct in criminal activity; disapproval shall not be based upon an employee's personal views of the merit of such correspondence. The deputy superintendent or his designee may disapprove receipt by an inmate of non-privileged correspondence, the contents of which fall as a whole or in significant part into any one of the following categories:

   (a)   Depicts or describes procedures for the construction or use of weapons, ammunition, bombs or incendiary devices;

   (b) Depicts, describes, or encourages methods of escape from correctional facilities, or contains blueprints, drawings or similar descriptions of any correctional institution within the Commonwealth;

   (c) Depicts or describes procedures for the brewing of alcoholic beverages, or the manufacture of drugs;

   (d)   Is written in code;

   (e)   Depicts, describes or encourages activities that may lead to the use of physical violence or group disruption;

   (f) Encourages or instructs in the commission of criminal activity;

   (g)   Sexually explicit material or material which features nudity which by its nature or content poses a threat to the security, good order, or discipline of the institution.

4/26/02                                                        103 CMR 481 - 231

103 CMR: DEPARTMENT OF CORRECTION



(3) Incoming Publications

(a) The deputy superintendent may reject a publication within a reasonable time from receipt to prevent interference with institutional goals of security, order, rehabilitation, or if it might facilitate, encourage or instruct in criminal activity. The deputy superintendent may not reject a publication solely because its content is religious, philosophical, political, social, or because its content is unpopular or repugnant. Publications which may be rejected by a deputy superintendent include, but are not limited to, publications which fall within one of the categories listed in 103 CMR 481.15(2)(a) through (g). An inmate may not receive more than one copy of a particular issue of a publication, newsletter, etc.

(b) Publications may be excluded solely because they contain sexually explicit material or feature nudity as defined in 103 CMR 481.06. In addition, the deputy superintendent of the Treatment Center, with the approval of the Commissioner, may exclude additional types of material that may interfere with the treatment and rehabilitation process at that institution.

(c) It is the deputy superintendent's decision as to whether or not a publication should be excluded.

(d) Sexually explicit material does not include material of a news or information type, or material illustrative of medical, educational, or anthropological content. Publications covering activities of gay rights organizations or gay religious groups, for example, should be admitted.

(e) Deputy superintendents may not establish an excluded list of publications. Deputy superintendents should review each issue of a subscription publication prior to rejection of the issue. Rejection of several issues of a subscription publication is not sufficient reason to reject the subscription in its entirety.

(f) Where a publication is rejected, the procedural requirements of 103 CMR 481.16 shall be followed. The notice required by 103 CMR 481.16 shall contain reference to the specific article(s) or material(s) considered objectionable.



481.16   Procedural Requirements for Disapproval of Incoming Correspondence/Publications

(1) Correspondence.   When any correspondence, or portion thereof, addressed to an inmate is received at the institution but is not delivered to the inmate for any reason set forth in 103 CMR 481.15, the inmate, and the sender when identifiable, shall be promptly notified, in writing, of the following:

   (a)   the reason(s) for refusing to deliver the correspondence or a portion thereof to an inmate;

   (b)   the fact that a written appeal may be submitted by the inmate or sender to the superintendent.

(2) Publications   When any publication addressed to an inmate is received at the institution but is not delivered to an inmate for any reason set forth in 103 CMR 481.15, the inmate, and the publisher when identifiable, shall be promptly notified, in writing, of the following:

   (a)   the reason(s) for refusing to deliver the publication to an inmate(s);

   (b)   the fact that a written appeal may be submitted by the inmate or publisher to the superintendent.

(3)   A single notice of rejection to the publisher from a particular institution or the Department shall be sufficient where more than one inmate at the institution or within the Department receives the subscription publication.

(4)   The deputy superintendent may permit an inmate an opportunity to inspect, in the presence of correctional personnel, any disapproved material for purposes of filing an appeal unless such review may provide the inmate with information of a nature which is deemed a threat or detriment to the security, good order or discipline of the institution or which might encourage or instruct in criminal activity.

(5)   The superintendent shall, within a reasonable time from receipt of such an appeal, make a decision and notify the appellant.

(6)   Where criminal activity is suspected, in addition to the foregoing procedures, the matter shall be referred to the appropriate law enforcement agency by the superintendent (e.g., U.S. Postal Service, F.B.I., district attorney), and the Commissioner shall be promptly notified.

4/26/02                                                   103 CMR 481 - 233

MTC-LAW LIBRARY

103 CMR: DEPARTMENT OF CORRECTION

103 CMR 405.00: Inmate Funds

EXHIBIT " B "

Section

405.01 Purpose
405.02 Authorization
405.03 Cancellation
405.04 Applicability
405.05 Access
405.06 Definitions
405.07 Inmate Fund Maintenance
405.08 Inmate Wages and Stipends
405.09 Mandatory Work Release Deductions
405.10 Voluntary Work Release Deductions
405.11 Interest Income Earned From Inmate Funds Deposit
405.12 Receipt of Funds - Inmate Account
405.13 Disbursement of Funds - Inmate Account
405.14 Additional Internal Control Measures - Disbursements
405.15 Disposal of Money Seized as Contraband
405.16 Outside Donations to Inmates
405.17 Disciplinary Process Sanctioned Reimbursements
405.18 Court Assessments and Other Authorized Assessments
405.19 Savings Bonds belonging to Inmates that are Transferred
405.20 Money of Escaped or Deceased Inmates
405.21 Release of Money Upon Parole or Release from the Department's Custody
405.22 Audits of Inmate Account Records
405.23 Monthly Reports
405.24 Access to Records
405.25 Retention of Accounting Records/Source Documents
405.26 General Information
405.27 Responsible Staff
405.28 Annual Review
405.29 Severability

405.01  Purpose

    The purpose of 103 CMR 405.00 is to set Department of Correction policy concerning the proper handling and distribution of inmate funds. 103 CMR 405.00 is not intended to confer any procedural or substantive rights or any private cause of action not otherwise granted by state or federal law.

405.02  Authorization

    103 CMR 405.00 is issued pursuant to M.G.L., c. 124, §1 (c), (q), (u); c.127, §§3, 48, 48A, 49, 96A, and 162; and M.G.L. c. 22E, §4, and Executive Order 399.

405.03  Cancellation

    103 CMR 405.00 cancels all previous Department policies and procedures governing inmate accounts and money.

405.04  Applicability

    103 CMR 405.00 applies to all employees, inmates and patients of Massachusetts correctional institutions and facilities.

405.05  Access

    103 CMR 405.00 shall be maintained within the central policy file of the Department and shall be accessible to all Department employees and inmates/patients. A copy of 103 CMR 405.00 shall also be maintained in each Superintendent's central policy file, fiscal office, and inmate library.

M.T.C. LAW LIBRARY

103 CMR: DEPARTMENT OF CORRECTION

405.09: continued

(b) Room and Board - At a rate to be determined by the Commissioner. Room and board collections shall be deposited into the consolidated account; and a check in the amount of these collections shall be sent to the Director of Administrative Services on a monthly basis. The Director of Administrative Services shall then ensure that room and board revenue is properly forwarded to the State Treasurer. Inmates who were previously employed and are now receiving unemployment compensation or workmen's compensation benefits shall continue to have a room and board deduction taken from the gross benefit amount received.

(e) Amounts required to meet the actual and necessary food, travel, and other expenses of the inmate when released for employment.

(d) Any amount as ordered by other state or federal agencies with a legal right thereto (i.e., Department of Revenue, Welfare, Internal Revenue).

(e) Deduction of the amount for restitution ordered as a result of the disciplinary process.

(f) Each inmate participating in a work-release program shall have a minimum 25 percent of his gross salary or unemployment benefits designated as savings. These funds cannot be withdrawn without the prior written authorization of the Superintendent for circumstances of compelling need. (See 103 CMR 405.08).

405.10 Voluntary Work-Release Deductions

Voluntary work-release deductions shall include, but are not limited to the following:

(1) Resident Fund - deduction agreed upon by the inmate and used to provide funds for the benefit of all residents or house members as determined by the Superintendent.

(2) Any amount voluntarily agreed to for family allotment and personal necessities while confined.

The institution Treasurer shall obtain written consent by the inmate before making any voluntary deductions.

405.11 Interest Income Earned From Inmate Funds on Deposit

The Department shall maintain an account with the State Treasurer that consolidates all inmate funds both personal and savings in custody of the Department in order to maximize interest income. The Department shall credit each active inmate saving account with interest earned by the inmate saving account on a monthly basis based on the saving account share of the net average daily balance. The Department may credit each active inmate personal account with interest earned by the inmate personal account on a monthly basis based on the personal account share of the net average daily balance. Interest earned by and not credited to inmate personal accounts shall be credited to a Department account(s) and utilized for inmate benefit. The Department shall credit the respective institutional inmate benefit account for all interest earned by institutional club accounts on a monthly basis based on the club accounts share of the net average daily balance. Net average daily balance shall be defined as the average daily balance less the amount of secured loans from these accounts. In order to be credited with interest income for the current period, an inmate must be active in the system the day the interest is posted.

405.12 Receipt of Funds Procedure - Inmate Account

(1) No cash should be accepted from donors. If cash arrives in the mail, the corrections employee who receives the cash shall document the cash received by properly preparing a pre-numbered DOC receipt form (CI-SECC-1). The Cash and prepared receipt shall be placed in an envelope and deposited to the Treasurer's strong box.

(2) All checks and money orders received shall be deposited in the Treasurer's strong box. No receipt shall be written for checks or money orders.

(3) The Treasurer or Designee shall empty the strong box each work day and give all checks, money orders, and cash receipts contained therein to the inmate account clerk.

M.T.C. LAW LIBRARY

11/19/04



405.12: continued

(4) The inmate account clerk shall:
    (a) Ensure all cash receipt slips in the series are accounted for.
    (b) Post all checks, money orders and cash receipts to the IMS Inmate Transaction screen.
    (c) Prepare a bank deposit slip (two copies)
    (d) Present the deposit to the Treasurer/Fiscal Manager

(5) Treasurer/Fiscal Manager shall:
    (a) Determine that the total of all income posted to the inmate accounting system agrees with the total of the prepared deposit slip.
    (b) Ensure that the daily deposit is made at the bank.
    (c) Ensure that the income amount is properly posted in the inmate fund cashbook.

(6) The inmate account clerk shall generate income receipt slips via the IMS and deliver same to the mail officer for distribution to the inmate population.

(7) The availability of funds for receipted personal/business checks of a relatively large denomination should be restricted by means of an account freeze until said check is properly returned and funds verified. All inmate receipts from the U.S. Treasury must be properly endorsed by said payee or any other monetary draft which documents a mandated endorsement. No institution shall accept/deposit any dual payee check in which an inmate is a co-payee. The Superintendent may, at his discretion, reject any receipt of funds on the behalf of any inmate that exceeds a reasonable amount and is not in the best interest of the institution to maintain.

(8) Cash receiving activities shall be centralized in as few hands as possible.

(9) Persons receiving cash shall not have the ability to enter or change data in the Inmate Management System Trust Fund Accounting Module.

(10) Incoming mail shall be opened by a person without the ability to enter or change data in the Inmate Management System Trust Fund Accounting Module (i.e., Mail Room Officer).

(11) All receipts must be deposited intact.

(12) Cashing of checks from daily receipts is prohibited.

(13) Specific persons shall be responsible for receipts from the time cash is received until it is deposited.

405.13 Disbursement of Funds Procedures - Inmate Account

(1) Whenever an inmate wishes to initiate the withdrawal of funds from his personal account, he shall fill out a withdrawal/issue slip. These slips shall be made available to the inmates at designated area(s) within the correctional institution and when filled out shall include:
    (a) Date
    (b) Amount to be withdrawn (marked cash or check/payee)
    (c) Purpose
    (d) Inmate's signature
    (e) Staff verification signature

(2) An individual(s) designated by the Superintendent shall be responsible for verifying the request came from the inmate on the form via signed approval and submitting the withdrawal/issue slip to the Treasurer's office. The Accounting Clerk/Cashier shall take the withdrawal/issue slip and:
    (a) Ensure that inmate has signed the request;
    (h) Ensure that the staff members verification signature is present;
    (c) Check inmate account to ascertain there are sufficient funds for withdrawal;
    (d) Disburse the funds from the inmates account in accordance with the request.

