UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
JOSEPH PETER SCHMITT                    )
                                        )
         v.                             )
                                        )       CIVIL ACTION NO. 05-11348-NG
ROBERT MURPHY, ET AL.                   )
_____)


REPORT AND RECOMMENDATION ON
MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT

April 26, 2010

SOROKIN, M.J.

        On June 22, 2005, Joseph Peter Schmitt brought this action against numerous officials at

the Massachusetts Treatment Center at Bridgewater (Treatment Center).[1]  Schmitt claims that

the defendants improperly confiscated his mail and certain items in his cell, in violation of his

First and Fourteenth Amendment rights.  On November 25, 2009, defendants Murphy,

Waitkevich, Clauss, and MacEachern filed a motion for summary judgment.  See Docket # 116.

The motion was referred to the undersigned on February 1, 2010.  For the reasons set forth

below, I recommend that the motion be ALLOWED in part and DENIED in part.

        If the Court adopts this recommendation two claims will require trial: (1) Schmitt's due

process challenge to the seizure of a money order from incoming mail directed to him and (2)

Schmitt's due process challenge to the defendant's compliance with regulations governing the

_____

        [1]Presently, the only defendants remaining in the case are Robert Murphy, Superintendent
of the Treatment Center; Robert J. Waitkevich, Robert D. Clauss, Duane MacEachern, and
Patricia Dolan.  On March 30, 2009, Judge Gertner dismissed all claims against David Leonard,
Steven Fairly, Mark Dare, Kathleen M. Dennehy, and Timothy Hall.  See Electronic Order
dated March 30, 2009.

handling of contraband property seized from his cell.  Genuine issues of material fact remain

regarding whether Schmitt objected to the seizure of the money order within a reasonable period,

whether the defendants' possessed the money order at the time of receipt of the objection,

whether the money order was returned to the sender and, regarding the items from the cell,

whether the defendants have complied with the regulation governing disposition of contraband

property.

BACKGROUND

In this litigation, Schmitt argues that defendants' confiscation of a money order that he

received in the mail in April of 2005, and personal items from his cell in May of 2005, violated

his First and Fourteenth Amendment rights.  There have been numerous dispositive motions filed

in this matter.  On April 22, 2008 and July 14, 2008, the moving defendants  filed motions to

dismiss.  On March 30, 2009, Judge Gertner issued an electronic order granting in part and

denying in part the motions.  In her ruling, Judge Gertner noted that, with regard to the First

Amendment claim, a prison official's

> decision to censor or withhold delivery of a particular letter must be accompanied
> by minimum procedural safeguards.  Procunier v. Martinez, 416 U.S. at 418.
> Those safeguards are (1) the inmate must be notified of the rejection of a letter
> written by or addressed to him; (2) the author of that letter must be given a
> reasonable opportunity to protest that decision; and (3) complaints must be
> referred to a prison official other than the person who originally disapproved the
> correspondence.  Id. at 418-19; see also Parenti v. Ponte, 1990 U.S. Dist. LEXIS
> 640 at *11 (D. Mass. Jan. 19, 1990).  These minimum standards are incorporated
> into 103 Code Mass. Regs. 481.15 and 481.16.
>
> According to the record, defendant Clauss requested that Schmitt's mail be
> monitored and confiscated the letter in question.  Defendant Murphy approved the
> monitor and was the final appellate authority under the Procunier decision.
> MacEachern notified Schmitt and the sender that the letter had been confiscated
> and that he could appeal to Murphy.  The letter/money order was returned to

> sender, however, before Schmitt could appeal.  Failure to enforce the minimum
> standards mandated by <u>Procunier</u> is not just a failure to enforce a prison
> regulation.  It is arguably a constitutional violation.  <u>Parenti</u>, 1990 U.S. Dist.
> LEXIS 640, at *13.  Where there are material facts in dispute about how the mail
> was rejected, why Schmitt was denied the opportunity to be heard, and who
> authorized each of these acts, summary judgment must be DENIED.

Electronic Order, March 30, 2009.  Judge Gertner also denied the motion as to Schmitt's claim

for violations of his right to procedural Due Process.  She ruled that defendants had failed to

explain how the confiscation of the money order had occurred, and that "[s]ince there are

material facts in dispute as to how and why his money order was returned, summary judgment is

DENIED."  <u>Id</u>.  Finally, with regard to Schmitt's claim that items were improperly confiscated

from his cell, Judge Gertner found that "[t]he regulations safeguard certain rights for Schmitt in

the event that his property is confiscated or deemed contraband.  At this point, it is not clear

whether the prison continues to investigate Schmitt and whether the applicable procedures are

being followed."  <u>Id</u>.[2]

On May 15, 2009, Schmitt moved for summary judgment.  Judge Gertner denied the

motion, explaining that

> there are numerous open questions of material fact remaining in the case.  To list
> only a few: What precisely was confiscated from Schmitt's cell, and was it
> contraband?  What process was provided to Schmitt before the DOC returned the
> $800 money order to sender and before it confiscated personal property from his
> cell?  Was Schmitt being investigated for tax fraud?

Electronic Order, June 9, 2009.

On November 25, 2009, following a period of discovery, defendants filed the instant

---

[2]Judge Gertner also granted defendants' motion as to Schmitt's claim that the search of
his cell violated the Fourth Amendment and Article 14 of the Mass. Declaration of Rights.  She
rejected defendants' argument that they were entitled to qualified immunity.  <u>See id</u>.

motion to dismiss or, in the alternative, for summary judgment.

<u>SUMMARY OF FACTS</u>

The facts as set forth by the defendants are as follows.[3]  The Regulations allow Murphy, as Superintendent of the Treatment Center, to "authorize the reading, censoring or disapproval of incoming non-privileged correspondence only to prevent interference with institutional goals of security, order, discipline, or if it might facilitate, encourage or instruct in criminal activity; disapproval shall not be based upon an employee's personal views of the merit of such correspondence. . . ."  103 C.M.R. 481.15(2).  On February 7, 2005, Murphy approved an "Ingoing/Outgoing Non-Privileged Mail Monitor" of any mail addressed to or from Schmitt.[4]  <u>See</u> Ex. A.[5]  According to the defendants, a mail monitor was necessary because of Schmitt's ongoing involvement with a criminal enterprise involving the fraudulent filing of federal tax returns.  On April 1, 2005, a letter arrived for Schmitt from a Lillian Bates.  It contained a money

---

[3]Schmitt has not filed a traditional opposition to the motion.  His submission does not respond directly to defendants' statement of facts, and instead states that he has "surpassed his pro se legal ability to pursue this case."  Docket # 119 ¶ 7.  Schmitt refers the court to his previously filed opposition to defendants' initial motions to dismiss.  <u>Id</u>.

[4]The Regulation relating to outgoing mail, 103 C.M.R. 481.14(1), is not at issue in this litigation.

[5]The court notes that Clauss requested that Murphy approve the *renewal* of Schmitt's mail monitoring.  The record does not reflect when the monitoring actually began.  In their Memorandum in support of their motion, defendants state that in February of 2005, Schmitt and another inmate conspired to alter a check from Massachusetts Correctional Legal Services in the amount of $16.85.  The check was altered to represent the amount of $12,700.  Memo. (Docket # 118) at 10.  Defendants further state that in 2004, Schmitt has requested an investigation into money orders that were allegedly not credited to his account.  During the investigation, Schmitt purportedly admitted that the money orders were part of an ongoing tax scam in which he was involved.  <u>See</u> <u>id</u>.

order in the amount of $800.00.[6]  On April 6, 2005, MacEachern sent a letter to Schmitt

notifying him that Ms. Bates' letter was opened and inspected on April 1, 2005.  MacEachern

further stated, "It was discovered that inside this letter was a suspicious money order . . . .  The

letter/money order will be retained as evidence pending an investigation.  The decision not to

forward this correspondence may be appealed in writing to the Appellate authority

(Superintendent)."  Ex. P.  On the following day, April 7, 2005, MacEachern sent a letter to Ms.

Bates informing her that the letter and money order had been designated as contraband and were

being held as evidence in a pending investigation.  See Ex. D.

On June 3, 2005, nearly two months after receiving the notification that his mail order

had been seized, Schmitt wrote to Murphy requesting that the money order be released and

credited to his inmate account.  Schmitt further stated, "If you deny my request then I request

that you inform me when the alleged investigation is due to be finished and my funds released to

me."  Ex. Q.  On June 8, 2005, Murphy instructed Waitkevich to "determine if money order is

still at this facility or if it was returned to sender."  Ex. R.  One day later, Waitkevich represented

to Murphy that he had "confirmed with IPS Officer Clauss that the money order has been

returned (certified mail) to Ms. Bates."  Ex. S.  On June 13, 2005, Murphy responded to Schmitt,

stating, in pertinent part, "You have inquired about the handling of [the money order].  Be

advised that the money order was returned to sender."  Ex. F.[7]

---

[6]Defendants noted that Ms. Bates had sent money orders to two residents other than
Schmitt, see Docket # 118-4, raising suspicions that the money orders were part of the alleged
fraud.

[7]The record does not contain any evidence that the money order was returned to Ms.
Bates.  Nor do defendants offer any information as to who sent the money order back to Ms.
Bates, or when it was returned to her.

The next month, on May 17, 2005, Inner Perimeter Security (IPS) officers conducted an investigation into a fraudulent check that was made out to Schmitt.  Schmitt was interviewed on the same day.  According to the May 27, 2005 memorandum detailing the investigation, Schmitt indicated in the interview that for the past year, he has been extorted by another resident.  See Ex. I.[8]  The memorandum further indicated that Schmitt told the interviewers that he kept an envelope labeled "extortion payments" in a gray folder in his cell.  Id.  Schmitt was transferred from his cell to the Minimum Privilege Unit and his cell was searched on the next day, May 18, 2005.

On May 20, 2005, Clauss sent a notice to Schmitt stating that "[t]here were numerous items of yours that were confiscated and will be retained in the IPS office pending investigation."  Ex. K.  The notice did not specify which items had been confiscated.  On May 23, 2005, Clauss sent a memorandum to Murphy detailing the items that were confiscated from Schmitt's cell.  Clauss indicated that the following items were being held in the IPS office pending investigation: (1) an address book containing names, "suspected addresses" of relatives and acquaintances of Treatment Center residents, and social security numbers of residents; (2) several tax forms and books from the years 2003 and 2004; (3) a magazine photograph of a young boy; (4) a National Geographic magazine cover enclosed with numerous magazine cut-outs of pre-adolescent children, primarily boys; (5) a magazine picture of a young boy fishing

---

[8]According to the memorandum, Schmitt told the interviewers that he fraudulently submitted charge slips, then sent the money to fictitious addresses after marking the envelopes as "legal mail."  The envelope containing the money would then be returned to Schmitt, and the money would be returned to him, since mail officers do not inspect legal mail.  Then, Schmitt would give the returned check to another resident, who in turn passed it on to another resident, who would then send it to "his people on the street," and have it sent back into the second or third resident's account.  See id.

with others; (6) a magazine picture of numerous nude or scantily clad women; (7) a piece of

white lined paper with the names and social security numbers of four Treatment Center

residents; and (8) an envelope that had been sent to an attorney but was sent back for insufficient

address.  Inside was a Time magazine, which was contraband at the Treatment Center because it

contained a photograph of a nude child. The memorandum stated that the names, addresses, and

social security numbers were copied and given to Internal Revenue Service agent Kristina

O'Connell.  Finally, the memorandum recommended that the items pertaining to young

adolescents be sent to the District Attorney's office.  See Ex. J.[9]

On May 27, 2005, Schmitt wrote a letter to Murphy "officially and formally requesting

an itemized list of my property which has been confiscated.  This matter is a criminal related

issue and I have been read my rights.  I am entitled the DUE PROCESS of itemized notification

when personal property is in fact confiscated.  If you deny my request please state the rules and

regulations or the MGL that you are basing this authorization upon so as I may take the correct

steps necessary to appeal such a decision, and protect my Due Process Rights."  Ex. L.

On June 1, 2005, Waitkevich wrote to Schmitt, informing him that his May 27 letter to Murphy

had been referred to Waitkevich.  Waitkevich stated, "Based on the evidence being held as part

of an on-going investigation, your request for a list of items confiscated is denied.  Upon

completion of the investigation, you will be notified."  Ex. M.  On June 4, 2005, Schmitt wrote

to Murphy again, reiterating his request for a detailed itemization of confiscated items.  See Ex.

L.  On June 7, 2005, Murphy wrote back to Schmitt stating that Waitkevich's response was

---

[9]Although this memorandum indicates that it was sent to Schmitt, defendants state that
Schmitt's name was written in error and that it was in fact only sent to Murphy.

appropriate, and that no further action would be taken at that time.  <u>See</u> Ex. M .  On July 11,

2005, Murphy provided Schmitt with the following inventory of confiscated items:

> address book -1
> white envelope -1
> tax books-2
> tax form-5
> manilla envelope-2
> magazine photo-3
> magazine cover-1
> white lined paper -1

<u>See</u> Ex. N.  Two weeks later, on July 25, 2005, Schmitt filed this lawsuit.

<u>DISCUSSION</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A

'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one

that has the potential of affecting the outcome of the case."  <u>Calero-Cerezo v. U.S. Dep't of</u>

<u>Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004), citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

248-250 (1986). .  "[A]n opposing party may not rely merely on allegations or denials in its own

pleading; rather, its response must – by affidavits or as otherwise provided in this rule –  set out

specific facts showing a genuine issue for trial.  If the opposing party does not so respond,

summary judgment should, if appropriate, be entered against that party."  Fed. R. Civ. P.

56(e)(2).  However, it is well-settled that "before granting an unopposed summary judgment

motion, the court must inquire whether the moving party has met its burden to demonstrate

undisputed facts entitling it to summary judgment as a matter of law." <u>Lopez v. Corporacion</u>

<u>Azucarera de Puerto Rico,</u> 938 F.2d 1510, 1517 (1st Cir. 1991) (citation and internal quotation

marks omitted).

First Amendment

To the extent that Schmitt contends that the DOC regulations contravene the First

Amendment, Thornburgh v. Abbott, 490 U.S. 401 (1989) applies.  In that case, for incoming

mail, the Court adopted the reasonableness standard set forth in Turner v. Safley, 482 U.S. 78

(1987) which involves a multi-step inquiry.  First, the court must determine whether "the

governmental objective underlying the regulations at issue is legitimate and neutral, and that the

regulations are rationally related to that objective."  Thornburgh, 490 U.S. at 414.  Here, the

regulations are unquestionably legitimate - they are expressly aimed at protecting security at the

Treatment Center and at stemming criminal activity.  See 103 C.M.R. 481.15(2) (listing security,

order, discipline, and concern about criminal activity as the objectives).  As to neutrality, where

"prison administrators draw distinctions between publications solely on the basis of their

potential implications for prison security, the regulations are 'neutral' in the technical sense . . ."

Id.  Therefore, the court finds that this first prong has been met.

Next, the court considers the "individualized nature of the determinations required by the

regulation."  Thornburgh, 490 U.S. at 416.  In Thornburgh, the Court noted that under the

regulations at issue, a publication could only be excluded if it was determined by the warden that

the particular publication is "detrimental to the security, good order, or discipline of the

institution or . . . might facilitate criminal activity."  Id. at 416.  The regulations at issue in this

case provide the same protection to the Treatment Center residents.  The regulations begin with

the statement that "[i]t is the policy of the Massachusetts Department of Correction not to read,

censor, or disapprove incoming correspondence, except where necessary to protect legitimate

governmental interests." 103 C.M.R. 481.15(1). Only the deputy superintendent or his designee may disapprove any incoming correspondence. The decision to reject a particular piece of correspondence is clearly made on an individual basis. The court finds that the Regulations applicable in this case are virtually identical to those at issue in <u>Thornburgh</u>, and that this prong clearly is settled in favor of defendants.

The third factor to be considered is "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison." <u>Id</u>. at 418. Here, the money order was rejected because of the Treatment Center's official's belief that it was related to an illegal scheme. The court must defer to the "informed discretion of corrections officials" as to this prong. <u>Id</u>., citing <u>Turner</u>, 482 U.S. at 90.

Finally, the censorship is vulnerable to challenge if "no obvious, easy alternative has been established." <u>Id</u>. If "an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." <u>Id</u>. Here, Schmitt does not propose any alternative to allowing suspected criminal objects into the prison, nor is the court able to contemplate any system that would be more just than the Regulations in place, which track the requirements set forth in <u>Procunier</u>.

Based on the above analysis, the court finds that the regulations pass constitutional muster. In addition, there was no First Amendment violation in applying these regulations to Schmitt's money order. The defendants felt that the money order was part of an ongoing criminal venture, and they censored his mail as a result. Schmitt has not stated that the actual censorship/seizure was improper. Accordingly, I recommend that defendants' motion be

ALLOWED as to the First Amendment claim.[10]

Due Process

As Judge Gertner indicated in her previous rulings, the Constitution requires that an

institution adopt minimum procedural safeguards to ensure a legitimate mail confiscation

process:

> Those safeguards are (1) the inmate must be notified of the rejection of a letter
> written by or addressed to him; (2) the author of that letter must be given a
> reasonable opportunity to protest that decision; and (3) complaints must be
> referred to a prison official other than the person who originally disapproved the
> correspondence. Id. at 418-19; see also Parenti v. Ponte, 1990 U.S. Dist. LEXIS
> 640 at *11 (D. Mass. Jan. 19, 1990). These minimum standards are incorporated
> into 103 Code Mass. Regs. 481.15 and 481.16.

Electronic Order, March 30, 2009.  Here, it is undisputed that the first safeguard was met.

---

[10]In any event, defendants argue that at no point has Schmitt argued that he was legally
entitled to the $800 money order.  Defendants' Interrogatory No. 5 to Schmitt asked him to
describe in detail his relationship with Ms. Bates, "including any financial or business
relationships."  Docket # 118-9 at 2. In response, Schmitt stated, "Above and beyond the fact
that Mrs. Lillian Bates sent $800.00 to Plaintiff Joseph Schmitt said Plaintiff stands soundly on
his 5th Amendment Right as guaranteed him by the defendants reading him his Maranda [sic]
Rights on one or more occasions." Id. at 3.  Interrogatory No. 11 asked, "On multiple occasions,
you indicated to Inner Perimeter Security staff that you were engaged in a scam involving
federal and state tax returns.  Describe in detail this scam, specifically detailing your
involvement, and identify any Treatment Center resident, temp commit or inmate, or any other
person involved." Id. at 5.  Schmitt responded,

> DENIED.  Plaintiff Joseph P. Schmitt stands on his 5th Amendment Right based
> on the fact that he has been read his Maranda Rights regarding such allegations,
> and the defendants are clearly attempting to turn civil procedures into an all out
> criminal matter.  Plaintiff Joseph P. Schmitt shall remain silent on this matter until
> such time as he is appointed counsel or criminally charged by a law enforcement
> agency.

Id.
According to defendants, Schmitt's refusal to provide information regarding his
relationship with Ms. Bates, and his alleged involvement in a tax scheme, indicates that he had a
criminal relationship with Bates and therefore had no right to receive the money order.

MacEachern informed Schmitt on April 6, 2005, that the money order had been confiscated and held pending an investigation.  In the same notice, Schmitt was informed that he could appeal the decision.[11]  The issue is whether Schmitt was given a "reasonable opportunity" to protest the seizure of the money order.[12]  According to defendants, the money was returned to Ms. Bates pursuant to an "oral policy."  Murphy Aff. ¶ 22.  Murphy elaborates on the policy by explaining that

> [w]hen a money order or other item of value is confiscated from an outside party, it is the policy of the Treatment Center to keep a copy of said item, and return the original to sender.  This is necessary because some money orders have expiration dates, and some carry additional charges when they are not redeemed in a timely manner.  There is no reason to deprive an outside party of an item of potential value when the Treatment Center can keep a copy of said item, for investigative or other purposes.

------------

[11]  The Regulations provide that "[w]hen any correspondence, or portion thereof, addressed to an inmate is received at the institution but is not delivered to the inmate . . . the inmate, and the sender when identifiable, shall be promptly notified, in writing, of the following: (a) the reason(s) for refusing to deliver the correspondence or a portion thereof to an inmate; (b) the fact that a written appeal may be submitted by the inmate or sender to the superintendent. 103 C.M.R. 481.16(1).

[12]Significantly, the Regulations do not provide a time frame for within which Schmitt must appeal the decision, nor did Schmitt's notice provide him with a deadline.

Defendants have submitted documents suggesting a policy requiring an appeal within seven (7) days of the inmate's receipt of a notice of contraband.  Attached to Murphy's affidavit is a form entitled "Disapproved Correspondence/Publication And Contraband Notice to Inmate." See Ex. O, Attach. 1.  The form (which is a blank template) contains the date of April 26, 2002, and has a notice in bold on the bottom informing the inmate that any appeal must be filed within seven days of receipt.  See id.  A Treatment Center "procedural attachment" to the Regulations regarding inmate mail (dated November of 2007 i.e. a date well after the incident in question) states that notice of contraband mail must be given to an inmate, and that the inmate has seven days to appeal.  See Ex O, Attach. 2, section X(a) and (c).  Defendants have submitted no evidence that Schmitt was provided with the form shown at Attachment 1.  Rather, he received a written notice from MacEachern that contained no notice of any appeal deadline.

Id.[13]

On March 19, 2010, this Court issued an Order stating that

[t]he present record does not contain sufficient information with regard to the return of the $800 money order sent to Schmitt by Ms. Bates. Defendants are instructed to supplement the record within ten (10) business days from the date of this Order by providing the Court with admissible evidence indicating: (1) the date on which the money order was returned, and (2) by whom it was returned. Any documentary evidence supporting the defendants' claim that the money order was returned via Certified Mail should be included.

Docket # 122. On April 6, 2010, defendants responded to the Order by stating that "[a]fter directing a further review of records, counsel for the Defendants was unable to find a document that specifically answers the Court's questions." Docket # 123 at 1. Neither a copy of the letter to Ms. Bates returning the money order, nor a certified mail receipt has been located. Id. at 2 n.1. Defendants have also not submitted an affidavit from DOC employee stating that the money order was returned on a specific date or prior to Schmitt's challenge to the seizure, nor a similar affidavit from Ms. Bates.

In short, defendants have not established, under the applicable summary judgment standard, all the facts necessary to prevail. Genuine issues of material fact remain in dispute regarding the handling of the money order, including whether and/or when it was sent back to Ms. Bates. Therefore, summary judgment on the issue of whether defendants violated Schmitt's right to Due Process must be DENIED.

Confiscation of Items from Cell

---

[13]The existence of an oral, rather than written, policy does not appear to implicate the Constitution. The Supreme Court discusses regulations or "practice." Procunier, 416 U.S. at 413.

In his affidavit, Murphy states that all of the items that were confiscated from Schmitt's cell are contraband.  Murphy Aff. ¶ 28.  The items have been held by IPS since they were confiscated.  On November 25, 2009, the same day defendants filed the instant motion, Murphy received confirmation from Sheila Smith, Director of Security, that the items are contraband and therefore are no longer required to be kept.  Id. ¶ 30.  Defendants state that a description of confiscated items was presented to the General Counsel on November 25, 2009, and that once written approval is received for final disposition of the items, Schmitt will be given the option of the manner in which he would like the items to be disposed of.  Id. ¶ 31.  The Regulations provide that

> [w]ithin one week of property being deemed contraband, the Property Officer at the facility temporarily storing the contraband shall notify the inmate of the item being stored by a contraband notification form.  The inmate may elect to dispose of the items by one of the following methods: (a) have the property retrieved by a visitor; (b) have the property mailed out to a specific destination; (c) have the property disposed of as seen fit by the institution.

103 CMR 403.14(1).

The Court notes that the defendants did not deem the items contraband until November of 2009, four years after the items were seized.  In the almost five months since this motion has been pending, defendants have not provided the Court with an update as to whether they have complied with 103 CMR 403.14(1).  Because defendants have not provided an explanation as to why the declaration of contraband did not occur until four years after the seizure, and because defendants have not shown compliance with the relevant regulations, as is their burden on their motion for summary judgment, I recommend that the motion be <u>DENIED</u> as to the items seized from Schmitt's cell.

<u>CONCLUSION</u>

For the reasons set forth above, I recommend that the motion for summary judgment (Docket # 116) be <u>ALLOWED</u> as to the First Amendment claims; <u>DENIED</u> as to the Due Process claim with regard to the money order; and <u>DENIED</u> as to the Due Process claim with regard to the items confiscated from Schmitt's cell.[14]


                                        ___/s / Leo T. Sorokin_____
                                        UNITED STATES MAGISTRATE JUDGE


---

[14]   The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. <u>See</u> <u>Keating v. Secretary of Health and Human Services</u>, 848 F.2d 271 (1st Cir.1988); <u>United States v. Emiliano Valencia-Copete</u>, 792 F.2d 4 (1st Cir.1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir.1980); <u>United States v. Vega</u>, 678 F.2d 376, 378-379 (1st Cir.1982); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir.1983); <u>see</u> <u>also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S.Ct. 466 (1985).